## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| STEPHEN DYE and DOUGLAS BOHN on behalf of themselves and all others similarly situated, | CASE NO. _____ |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| TAMKO BUILDING PRODUCTS, INC., | |
| Defendant. | |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff, Stephen Dye and Douglas Bohn, by and through undersigned counsel, on behalf of themselves and all other persons and entities similarly situated (the "Class," "Classes," or "Class members"), bring this class action against Defendant, Tamko Building Products, Inc. ("Tamko" or "Defendant"), and for their Class Action Complaint allege, upon information and belief and based on the investigation to date of counsel, as follows:

## <u>NATURE OF ACTION</u>

1.      This is a class action seeking damages and declaratory relief in connection with defective shingles designed, manufactured, marketed, advertised, and sold by Tamko in the State of Florida.

2.      At all times material hereto, Tamko designed, manufactured, and marketed its Tamko Heritage Series Shingles (the "Shingles" or "Tamko Shingles"), and represented and marketed them to Florida consumers as durable, reliable, free from defects, compliant with ASTM standards, and appropriate for use on Plaintiffs' and Class

members' homes, residences, buildings, and other structures.

3.     Contrary to Tamko's representations regarding the Shingles, the Shingles were and are defective and problematic, at the time of sale and thereafter. They blister and crack, leading to early granule loss and increased moisture absorption, and they otherwise do not perform as promised and/or reasonably expected, thereby permitting and/or causing other property damage to other building components and to property present inside. Nevertheless, Tamko has sold and continues to sell the Shingles to the public and to make false representations, despite their defects that have caused consumers in Florida enormous property damage and substantial removal and replacement costs.

4.     As a result of Tamko's defective Shingles, Plaintiffs and the Class members have suffered and continue to suffer extensive damages.

## INTRODUCTION AND BACKGROUND

5.     Tamko designed, manufactured, supplied, and/or distributed Tamko Shingles in the State of Florida. Upon information and belief, Tamko was made aware of the Shingles' potential for blistering, degradation, and degranulation but did nothing to correct the defective design or formulation from which these failures stemmed or the other defects alleged herein.

6.     By means of its representations concerning the Shingles, which were widely distributed to Florida building professionals and generally available to Plaintiffs and Class members at the time of the sale, Tamko represented, among other things, that the Shingles were free from manufacturing defects.

7.     Tamko represented to Plaintiffs and Class members, in documents

2

available to the public, that its Shingles would have a useful life of at least 30 years.

8.    Tamko made these representations before purchase and at the time of purchase via sales brochures and marketing materials discussed herein. Plaintiffs and the Class members relied upon these representations, which became the basis of their bargains when Plaintiffs and the Class members purchased the Shingles and/or structures on which the Shingles were installed.

9.    In addition, Tamko represented that the Shingles conformed to all applicable building codes and industry standards, including those in the State of Florida. Said conformity was a part of the basis of the bargain when Plaintiffs and the Class members purchased their Shingles.

10.    Upon information and belief, Tamko discovered that its Shingles contained defects that cause the Shingles to blister, crack, split, and suffer from early and excessive granule loss, increased moisture absorption, and reduced life expectancy.

11.    Upon information and belief, Tamko discovered that it was using less than the required amount of asphalt in its shingles, reducing the strength of the shingles and resulting in wind loss and premature cracking and breaking of the Shingles.

12.    In addition, the Shingles are so defectively designed and manufactured that they prematurely fail, causing physical damage to the underlying structures and other property of Plaintiffs and Class members. Specifically, a defect in the Shingles' design and manufacture permits blisters and cracks to occur because Tamko designed the Shingles to be manufactured with less than the required amount of asphalt and in a manner that permits moisture intrusion, creating gas bubbles that result in blistering and

cracking.

13.     The defects present in the Shingles make the Shingles unfit for their intended use and are so severe that Plaintiffs and Class members must repair or replace their Shingles sooner than reasonably expected.

14.     Tamko knew or should have known that the applicable building codes in effect include industry standard conformance requirements for shingles within those jurisdictions.

15.     Tamko knew or should have known that its Shingles did not satisfy industry standards, and as a result, did not satisfy the building codes adopted throughout the State of Florida.

16.     Tamko also knew or should have known that its Shingles were defective in design, were not fit for their ordinary and intended use, were not merchantable, and would not perform in accordance with the advertisements, marketing materials disseminated by Tamko or with the reasonable expectations of ordinary consumers such as Plaintiffs and the Class members.

17.     Indeed, because the Shingles blister and crack, resulting in early and excessive granule loss and diminished life expectancy, the Shingles are neither durable nor suitable for use as a building product to be installed on Plaintiffs' and Class members' structures.

18.     This defective condition is common among Plaintiffs and the Class members because the Shingles fail to satisfy the industry standard conformance requirements included in the building codes adopted throughout the State of Florida.

19.     Thus, Tamko Shingles have not met Tamko's representations, industry standards, or reasonable consumer expectations.

## PARTIES

**Plaintiff Stephen Dye**

20.     Plaintiff Stephen Dye ("Dye") is a citizen and resident of Florida and owns a home located at 5809 S. Gordon Ave, Tampa, Florida 33611.

21.     Dye's home has Tamko Shingles that were installed by Tampa Roofing Company of Tampa, Florida in 2013.

22.     Prior to purchase, Dye, through his roofer, relied on Tamko's representations concerning the quality and durability of the Tamko Shingles—specifically, that the Shingles would be free from defects for 30 years, conformed to all applicable industry standards and building codes, and were durable and reliable and would perform well when exposed to weather conditions in the State of Florida.

23.     Dye discovered that his Shingles were cracking, blistering, prematurely failing, and experiencing substantial discoloration and severe granule loss

24.     After the installation of the Tamko Shingles in 2013, Dye discovered granules from his shingles on his patio.

**Plaintiff Douglas Bohn**

25.     Plaintiff Douglas Bohn ("Bohn") is a citizen and resident of Florida and owns a home located at 2064 Farm Way, Middleburg, Florida 32068.

26.     Bohn's home has Tamko Shingles that were installed by Duffield Home Improvements of Gainesville, Florida in March 2009.

27.     Prior to purchase, Bohn relied on the representations that the Shingles would be free from defects for 30 years and conformed to all applicable industry standards and building codes.

28.     Since purchase, Bohn discovered that his Shingles were cracking, blistering, prematurely failing, and experiencing severe granule loss.

29.     Bohn contacted Tamko to complain about the performance of its product. In response, and on Tamko's initiative, Bohn subsequently received a warranty claim form to complete and return along with photographs and other supporting documentation.

30.     On or about August 22, 2014, Bohn promptly returned to Tamko the completed warranty claim form along with photographs of his damages. On or about September 17, 2014, Bohn received a letter from Tamko offering him a partial settlement of his claims. Tamko refused to provide additional compensation for or otherwise remedy Bohn's problems.

**Defendant Tamko Building Products, Inc.**

31.     Defendant Tamko Building Products, Inc. is a Missouri corporation with its principal place of business located at 220 West 4th Street, Joplin, Missouri 64801.

32.     Throughout the State of Florida, Tamko holds itself out, to both the construction industry and the public at large, as being knowledgeable in the design and manufacture of roofing products and as a provider of quality roofing products, including the Shingles that are the subject of this litigation.

33.     In its marketing materials, Tamko claims to be "a leading independent manufacturer of residential and commercial building products" and represents that its

roofing products will "deliver the quality and performance as promised."

## JURISDICTION AND VENUE

34.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2) (diversity jurisdiction) and the Class Action Fairness Act, in that (i) there is complete diversity (Plaintiffs are citizens of Florida and Defendant is incorporated in and otherwise maintain its principal place of business in Missouri), (ii) the amount in controversy exceeds $5,000,000.00 (Five Million Dollars) exclusive of interests and costs, and (iii) there are 100 or more members of the proposed Class.

35.     Tamko conducts substantial business in Florida, including the sale and distribution of the Tamko Shingles in Florida, and has sufficient contacts with Florida or otherwise intentionally avail themselves of the laws and markets of Florida, so as to sustain this Court's jurisdiction over Defendant.

36.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to this claim occurred in this District, a substantial part of the property that is the subject of this action is situated in this District, and Defendant is subject to personal jurisdiction in this District.

37.     In marketing, distributing, promoting, and selling the Shingles to purchasers throughout Florida, either directly or indirectly through third parties or related entities, Tamko has benefitted from Florida laws and profited from Florida commerce.

38.     Tamko conducted systematic and continuous business activities in and

throughout the State of Florida by selling and distributing the Shingles throughout the State, and otherwise intentionally availed itself of Florida markets through the promotion and marketing of their business, including the sale of the products at issue in this litigation.

## CLASS ACTION ALLEGATIONS

39.     Plaintiffs bring this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and case law thereunder on behalf of herself and all others similarly situated in the State of Florida, with the Classes defined as follows:

### DAMAGES CLASS:

**All persons and entities who are current or former owners of structures located within the State of Florida on which Tamko Shingles are or were installed and whose Shingles have exhibited blistering, cracking, granule loss, or premature failure.**

### DECLARATORY RELIEF CLASS:

**All persons and entities who are current or former owners of structures located within the State of Florida on which Tamko Shingles are or were installed.**

40.     Excluded from the Damages Class and the Declaratory Relief Class (collectively, the "Classes") are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Tamko and any entity in which Tamko has a controlling interest or which has a controlling interest in Tamko, and the legal representatives, assigns, and successors of Tamko; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

41.     *Numerosity*:   The Classes are composed of a thousand or more persons

geographically dispersed throughout Florida, the joinder of whom in one action is impractical. Moreover, upon information and belief, the Classes are ascertainable and identifiable from Tamko's records or identifying marks on the Shingles.

42.     *Commonality*:    The critical question of law and fact common to Plaintiffs and the Classes that will materially advance the litigation is whether the Shingles are inherently defective, contrary to the expectations imparted by Tamko through its representations and omissions.

43.     Furthermore, other questions of law and fact common to the Classes that exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes include the following:

    a.    Whether the Shingles have not or will not perform in accordance with the reasonable expectations of ordinary consumers;

    b.    Whether the Shingles conform to applicable building code and/or relevant standards;

    c.    Whether the Shingles are defective;

    d.    Whether Tamko knew or should have known of the defects;

    e.    Whether Tamko concealed from consumers and/or failed to disclose to consumers the defects;

    f.    Whether Tamko's Limited Warranty fails of its essential purpose;

    g.    Whether Tamko's limitations on its Limited Warranty are unconscionable;

    h.    Whether Tamko failed to properly disclaim any limitation to pay for installation of replacement Shingles;

    i.    Whether Tamko committed unfair and/or deceptive acts;

    j.    Whether Tamko misrepresented the qualities of the Shingles;

k.   Whether Tamko failed to warn of potential defects in the Shingles or omitted critical information regarding Shingles' defects in its marketing, sales, and/or installation materials;

l.   Whether Plaintiffs and the Classes are entitled to compensatory damages, including, among other things: (i) compensation for all out-of-pocket monies they expended for replacement of the Shingles and/or installation costs; (ii) the failure of consideration in connection with and/or difference in value arising out of the variance between the Shingles as represented and the Shingles containing the defects; and (iii) the diminution of resale value of their structures resulting from the defects in the Shingles;

m.   Whether Plaintiffs and the Classes are entitled to all costs associated with replacement of their defective Shingles with non-defective shingles;

n.   Whether Plaintiffs and the Classes are entitled to restitution and/or disgorgement; and

o.   Whether Plaintiffs and the Classes are entitled to specific performance of the Limited Warranty.

44.   *Typicality*:   Plaintiffs' claims are typical of the claims of the Class members, as all such claims arise out of Tamko's conduct in designing, manufacturing, marketing, advertising and selling the defective Shingles and Tamko's conduct in concealing the defects in the Shingles to owners, contractors, developers, and suppliers.

45.   *Adequate Representation*: Plaintiffs will fairly and adequately protect the interests of the Class members and have no interests antagonistic to those of the Classes. Plaintiffs have retained counsel experienced in the prosecution of complex class actions, including but not limited to consumer class actions involving, *inter alia*, product liability, construction defects, and product design defects.

46.   *Predominance and Superiority*: This class action is appropriate for certification because questions of law and fact common to the Class members

10

predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all Class members is impracticable. Should individual Class members be required to bring separate actions, this Court and/or courts throughout the State of Florida would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale, and comprehensive supervision by a single court.

## COMMON FACTUAL ALLEGATIONS

### A.  Design and Manufacture of the Tamko Shingles

47.     Tamko represents to Plaintiffs, Class members, and their agents, builders, contractors, and suppliers, in documents generally available to the public, that its Shingles are durable, reliable, and will have a useful life of at least 30 years. Tamko also represents that the Shingles meet industry accepted building codes and industry standards. Tamko makes these representations before purchase and at the time of purchase via sales brochures, marketing materials (including but not limited to online advertisements, store displays, sales seminars, and training materials), and on the Shingles' packaging.

48.     Tamko also markets and represents that its Shingles "offer the longest up-

11

front protection available."

49.     These bold and definitive statements directly contradict the experiences of Plaintiffs and the Classes and amount to substantial misrepresentations of material facts.

50.     Tamko also represents that its Shingles conform to all applicable industry standards and building codes, including ASTM D3462 and those adopted by the State of Florida. The Shingles, however, do not conform to these representations.

51.     In order to comply with the applicable building codes and industry standards represented by Tamko, asphalt shingles are manufactured from a rolled glass fiber felt that is impregnated and coated with an asphaltic material.

52.     The asphaltic material used to impregnate, laminate, and coat the glass felt is permitted to be compounded with a mineral stabilizer. Glass fibers are permitted to be compounded with the asphalt in addition to, or instead of, the mineral stabilizer. The bottom side of the Shingles is required to be covered with a suitable material such as pulverized sand, talc, or mica to prevent the shingles from sticking together in the package.

53.     The weather surface of the Shingles is to be uniform in finish and may be embossed to simulate a grainy texture. Mineral granules are to cover the entire surface and shall be firmly embedded in the asphalt coating. The granules may project into the mat to a limited degree.

54.     The finished Shingles are required to be free of visible defects such as holes, edges, blisters, cracks, and indentations and should not have excessive moisture.

55.     Tamko Shingles were manufactured with less asphalt than is required by

the applicable industry standards, resulting in excessive surfacing loss and granule loss. Because Tamko Shingles were created with less asphalt than necessary, the Shingles also have far lower tear strength, and accordingly are particularly prone to cracking and splitting and do not comply with applicable industry standards and building codes.

56.     Due to the defect in Tamko's design and manufacture of the Shingles, the Shingles do not conform to Tamko's express representations and do not conform to the applicable building codes or industry standards.

**B. Tamko's Refusal to Notify Customers of the Shingles' Defect and Failures.**

57.     Tamko has received hundreds of claims alleging the same design and/or manufacturing defects that are the subject of this class action.

58.     Though it has received complaints from consumers such as Plaintiffs and other Class members regarding the defects in design and manufacturing, Tamko has refused to convey effective notice to consumers concerning these defects and has refused to fully repair the damage caused by the Shingles' premature failure(s).

59.     The damages suffered by Plaintiffs and the Classes were a foreseeable result of Tamko's design and manufacture of a product with the defects discussed herein. Likewise, the manufacturing, production, marketing, distribution, and sale of the defective Shingles are in the complete control of Tamko, and, thus, the defects were foreseeable to Tamko.

60.     Tamko has received and continues to receive numerous complaints and claims from property owners, developers, and installers within the State of Florida regarding the failure of the Shingles, and Tamko thus knew or should have known that its

product was and is defective.

61.     Tamko failed to take any steps to notify Plaintiffs and the Class members of the defects in its Shingles. Furthermore, Tamko has failed to take steps to adequately compensate Plaintiffs and the Classes in order to make them whole for the damages they have suffered and continue to suffer as a result of the defective Shingles.

62.     As a result of the defects and failures alleged herein, Plaintiffs and the Class members have suffered actual damages. The Shingles on their homes, residences, buildings, and other structures have and will continue to fail prematurely compared Tamko's assertions and reasonable consumer expectations, resulting in and requiring Plaintiffs and the Class members to expend large sums of money to repair the damage caused by the defective Shingles and to prevent such damage from continuing.

63.     At all relevant times, Tamko had a duty to disclose to Plaintiffs and the Classes that its Shingles were and are defective, prone to foreseeable and uniform problems such as those described herein, and otherwise inherently flawed in design such that the Shingles are not reasonably suitable for use as an exterior building material.

64.     Because the defects in the Shingles are latent and not detectable until manifestation, Plaintiffs and the Class members were not reasonably able to discover their Shingles were defective until after installation, even with the exercise of due diligence.

65.     The Shingles designed, manufactured, produced, marketed, and sold by Tamko are defectively designed and manufactured such that they fail prematurely, causing damage to the property of Plaintiffs and Class members, forcing them to repair or

replace the Shingles sooner than promised and/or reasonably expected.

66.     Plaintiffs seek to recover for themselves and the Class members the costs of repairing the damage to their property and replacing their Shingles. They also seek injunctive relief requiring Tamko to acknowledge and provide notice of the defects and to inspect and replace the defective Shingles.

## ESTOPPEL FROM PLEADING STATUTE OF LIMITATIONS

67.     Plaintiffs are within the applicable statute of limitations for the claims presented hereunder because they did not discover the defects and could not reasonably have discovered the defects. Plaintiffs also assert that this action has been filed within all applicable time frames from the date of initial use or consumption of the Shingles.

68.     Tamko is estopped from relying on any statutes of limitation or repose by virtue of its acts of fraudulent concealment and omissions, which include Tamko's intentional concealment from Plaintiffs and the general public that its Shingles were defective, while continually marketing the Shingles as a durable and suitable product.

69.     Tamko had a duty to disclose that its Shingles were defective, unreliable, and inherently flawed in design and/or manufacture.

70.     Plaintiffs and the Classes had no knowledge of, and no reasonable way of discovering, the latent defects found in the Tamko Shingles at the time they purchased or installed their Shingles or purchased structures on which the Shingles were installed.

71.     Tamko did not notify, inform, or disclose to Plaintiffs and the Classes of the defects in the Shingles.

72.     Furthermore, Tamko representatives have fraudulently misrepresented to

Class members that the damages they observed were not the result of manufacturing defects. Statements such as these constitute an active effort by Tamko to conceal and misrepresent the true cause of the damage and hide the fact that the product is defective. Tamko also represents that the Shingles will have a useful life of at least 30 years.

73.     Because Tamko failed in its duty to notify Plaintiffs and Class members that its product was defective and actively attempted to conceal this fact, the statute of limitations should be tolled on Plaintiffs' claims.

## COUNT I
## VIOLATION OF THE FLORIDA DECEPTIVE
## AND UNFAIR TRADE PRACTICES ACT

74.     Plaintiffs, individually and on behalf of all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

75.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* (FDUTPA).  The stated purpose of this Act is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." *Id*. §501.202(2).

76.     Plaintiffs and all Class members are "consumers" and the transactions at issue in this Complaint constitute "trade or commerce" as defined by FDUTPA. *See id*. § 501.203(7)-(8).

77.     FDUTPA declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct

of any trade or commerce." *Id*. § 501.204(1)

78.     Tamko violated FDUTPA by engaging in the conduct described herein, which constitutes unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

79.     In violation of FDUTPA, Defendant employed fraud, deception, false promise, misrepresentation, and the knowing concealment, suppression, or omission of material facts in its sale and advertisement of the Shingles in the State of Florida.

80.     Tamko engaged in concealment, suppression, or omission in violation of the FDUTPA when it sold and advertised the Shingles knowing that the Shingles possessed defects that would result in cracking, blistering, granule loss, and premature failure, and that the Shingles did not conform to ASTM standards appropriate for use in homes, residences, and other structures.

81.     Tamko engaged in the concealment, suppression, or omission of the aforementioned material facts with the intent that others, such as Plaintiffs, Class members, their builders/contractors, and/or the general public would rely upon the concealment, suppression, or omission of such material facts and purchase Tamko Shingles containing said design defect and misrepresented qualities.

82.     Plaintiffs, Class members, their agents, and/or their builders would not have purchased the Shingles had they known or become informed of the material defects in the Shingles.

83.     Tamko's concealment, suppression, or omission of material facts, as alleged herein, constitutes unfair, deceptive and fraudulent business practices within the

meaning of the FDUTPA.

84.     Tamko has acted unfairly and deceptively by misrepresenting the quality of the Shingles.

85.     Tamko either knew, or should have known, that the Shingles were defectively designed and/or manufactured and would blister, crack, and prematurely fail, which would result in significant damages and losses to Plaintiffs and the Classes.

86.     Upon information and belief, Tamko knew that the Shingles, at the time they left its control, contained the defect described herein resulting in blistering, cracking, granule loss, and premature failure. At the time of sale, the Shingles contained design and construction defects. These defects reduced the Shingles' effectiveness and performance, rendered the Shingles unable to perform the ordinary purposes for which they were used, and caused the damage described herein.

87.     As a direct and proximate cause of the FDUTPA violations described above, Plaintiffs and the Class members have been injured in that they have purchased the defective Shingles, or purchased homes or other structures with the defective Shingles, based on the nondisclosures of material facts alleged above. Had Plaintiffs and Class members known the defective nature of the Shingles, they would not have purchased or would not have paid what they did for the Shingles or their structures.

88.     Tamko used unfair methods of competition and unfair or deceptive acts or practices in conducting its businesses. Tamko continues in this unlawful conduct, with no indication that it will cease.

89.     Tamko's actions in connection with the manufacturing and distributing of

Shingles as set forth herein evidences a lack of good faith, honesty in fact, and observance of fair dealing, so as to constitute unconscionable commercial practices in violation of the FDUTPA.

90.     Tamko acted willfully, knowingly, intentionally, unconscionably, and with reckless indifference when it committed these acts of consumer fraud.

91.     Said acts and practices on the part of Tamko were and are illegal and unlawful pursuant to Florida Statutes § 501.204.

92.     As a direct and proximate result of Defendant's FDUTPA violations, Plaintiffs and the Class members have been injured and are entitled to compensatory damages, including but not limited to the difference in value between the Shingles as delivered and as they should have been delivered, as well as equitable relief, punitive damages, costs, and reasonable attorney's fees.

**COUNT II**
**BREACH OF EXPRESS WARRANTY**

93.     Plaintiffs, individually and on behalf of all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

94.     Tamko marketed and sold the Shingles into the stream of commerce with the intent that the Shingles would be purchased by Plaintiffs and Class members.

95.     Through its written warranties, brochures, and marketing materials regarding the durability and quality of the Shingles, Tamko created express warranties that became part of the basis of the bargain with Plaintiffs and the Class members.

96.     Tamko expressly warranted to Plaintiffs and the Class members that the Shingles they purchased would be free from defects in materials and workmanship

substantially impairing their operation or performance, such that the Shingles would have a useful life of at least 30 years.

97.    Tamko also expressly represented that the Shingles would conform to all applicable building codes and industry standards.

98.    These representations became the basis of the bargains through which Plaintiffs, Class members, and/or their builders purchased the Shingles or structures on which the Shingles were installed.

99.    Tamko breached its express warranties to Plaintiffs and the Classes in that its Shingles did not, and do not, maintain their structural integrity or perform as promised or conform to all applicable building codes and industry standards. Tamko's Shingles experience early granule loss, wear pits, blistering, increased moisture absorption, premature failure, and reduced life expectancy and otherwise do not perform as warranted by Defendant.

100.    Tamko's warranties fail of their essential purpose because they purport to warrant that the Shingles will be free from manufacturer defects, such that the Shingles will have a useful life of at least 30 years, when in fact the Shingles fail far short of the applicable warranty period.  To the contrary, due to the blisters in the Shingles, Tamko Shingles begin failing after only several years of use, if not less.

101.    Moreover, Tamko's warranties are woefully inadequate to repair and replace failed Shingles, let alone to provide reimbursement for any damage suffered to underlying structures due to the inadequate protection provided by the product. The remedies available in Tamko's Limited Warranty are limited to such an extent that they

do not provide a minimum adequate remedy.

102.    The limitations on remedies and the exclusions in Tamko's Limited Warranty are unconscionable and unenforceable.

103.    Tamko has denied, failed to pay in full, or failed to respond to warranty claims.

104.    As owners of structures with defective Shingles, which have not been and would not be sufficiently repaired or replaced by Tamko, Plaintiffs and the Class members have not received the value of what was bargained for at the time the Shingles were sold or were transferred through the sale of the structures.

105.    As a result of Tamko's breach of its express warranties, Plaintiffs and the Class members have suffered actual damages in that they purchased and installed on their homes, residences, buildings, and other structures an exterior Shingle product that is defective and that has failed or is failing prematurely due to blistering, granule loss, and increased moisture absorption. This failure has required or is requiring Plaintiffs and Class members to incur significant expenses in repairing or replacing their Shingles. Replacement is required to prevent ongoing and future damage to the underlying structures or interiors of Plaintiffs' and Class members' structures.

106.    As a direct and proximate result of Tamko's breach of the express warranties, Plaintiffs and Class members have suffered actual and consequential damages.

107.    All conditions precedent to with respect to filing this claim have been fulfilled.  Pursuant to Florida Statutes § 672.607(3)(a), Tamko has been given prior notice

of this claim via Plaintiff's aforementioned correspondence.

## COUNT III
## STRICT PRODUCTS LIABILITY
## DESIGN DEFECT, MANUFACTURING DEFECT, AND FAILURE TO WARN

108.   Plaintiffs, individually and on behalf of all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

109.   At all times relevant to this Complaint, Tamko was engaged in the design, manufacture, and sale of the Shingles and had a statutory duty of care.

110.   Tamko breached its duty because the Shingles, at the time they were sold, were defectively designed and posed a substantial likelihood of harm including the risk of blistering, early granule loss, wear pits, increased moisture absorption, premature failure, reduced life expectancy, and premature deterioration.

111.   Were the design defects known at the time of the manufacture, a reasonable manufacturer would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner.

112.   Because Tamko defectively designed the Shingles, the Shingles were unreasonably dangerous to Plaintiffs' and Class members' properties at the time Tamko sold the Shingles for their intended use on customers' structures.

113.   Feasible alternatives existed to make the Shingles safer for intended use at the time of design.  Tamko was very knowledgeable about the product and aware that feasible alternatives existed that would maintain the usefulness of the Shingles and eliminate the aforementioned harm.

114.   The defectively designed Shingles reached consumers without substantial

or significant changes in the condition from when Tamko sold them. Tamko knew that the Shingles would reach consumers without such substantial or significant change.

115.    The defective Shingles caused, among other damages and expenses, structural damage and repair and replacement costs.

116.    The injuries caused to Plaintiffs and the putative Classes as a result of the defective Shingles could and should have been reasonably foreseen by Tamko.

117.    Because of Tamko's defective design of the Shingles, Plaintiffs and the putative Class members have been, are, and will be damaged in an amount to be determined at trial.

118.    Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Tamko for compensatory damages for each Class member and for the establishment of the common fund, plus attorney's fees, interest and costs.

## COUNT IV
## NEGLIGENCE/NEGLIGENT DESIGN/NEGLIGENCE *PER SE*

119.    Plaintiffs, individually and on behalf of all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

120.    At all times material hereto, Tamko designed and manufactured the Shingles.

121.    Tamko had a duty to Plaintiffs and the Class members to exercise reasonable and ordinary care in the formulation, testing, design, manufacture, and marketing of the Shingles, either through its own testing or by verifying third-party test results.

122.    Tamko had a duty to Plaintiffs and Class members to ensure that the

23

Shingles complied with all applicable building codes and industry standards.

123.   Tamko breached its duty by producing and selling a defective product to Plaintiffs and the Class members.

124.   Tamko failed to exercise ordinary and reasonable care in the design and manufacture of the Shingles.

125.   As described herein, Tamko's defective Shingles have failed in numerous ways, including blistering, cracking, splitting, early granule loss, wear pits, increased moisture absorption, premature failure, wind loss, and reduced life expectancy.

126.   Tamko further breached its duty by failing to notify Plaintiffs and the Class members of the defects in the Shingles they were purchasing and installing and by failing to take any remedial action once Tamko was on notice that its product was defective.

127.   Tamko knew or should have known that the Shingles were defective, would fail prematurely, were not suitable for use as an exterior shingle product, and otherwise were not as it represented, and Tamko should have foreseen that Plaintiffs and Class members would rely, to their detriment, on its marketing claims concerning the Shingles' long-term durability.

128.   As a direct and proximate cause of Tamko's negligence, Plaintiffs and the Class members have suffered actual damages in that they purchased and installed on their structures, or purchased structures on which were installed, an exterior Shingle product that is defective and fails prematurely due to blistering, early granule loss, wear pits, premature failure, reduced life expectancy, moisture penetration, and other inherent

defects. On information and belief, the defects have caused damage to Plaintiffs' and Class members' structures, as well as to the Shingles themselves, by allowing moisture to enter through the Shingles.

129.    These failures have caused and will continue to cause Plaintiffs and the Classes to incur expenses repairing or replacing their Shingles as well as the resultant progressive property damage.

## COUNT V
## NEGLIGENT MISREPRESENTATION

130.    Plaintiffs, individually and on behalf of all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

131.    Tamko represented that the Shingles conformed to all applicable building codes and industry standards and that the Shingles would be free from defects for at least 30 years. Tamko marketed, advertised and sold the Shingles without adequate testing and without warning Plaintiffs and the Classes that it had not adequately tested the Shingles.

132.    These misrepresentations and omissions concerned material facts that influenced Plaintiffs and the Class members in their decisions to purchase the Shingles or their structures on which the Shingles were installed.

133.    Tamko intended to supply these misrepresentations and omissions to Plaintiffs, the Class members, and other purchasers it knew would supply them thereto, and intended that the recipients act upon them by purchasing the Shingles.

134.    Tamko, at the time it made these representations, knew or should have known that these representations were false or were made without knowledge of their truth or falsity.

135.   Plaintiffs and Class members justifiably and detrimentally relied on these representations and, as a proximate result thereof, have and will continue to suffer damages in an amount to be proven at trial.

136.   Plaintiffs and the Class members incurred monetary losses as a result of Tamko's wrongful conduct because: (a) they would not have purchased the Shingles or their structures on the same terms had they known the true facts concerning the Shingles' defects; (b) the Shingles did not perform as promised; and (c) Plaintiffs and the Classes have been damaged and continue to suffer damages, in an amount to be proven at trial.

## COUNT VI
## <u>UNJUST ENRICHMENT</u>
### (Pleading in the Alternative)

137.   Plaintiffs, individually and on behalf of all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

138.   Substantial benefits have been conferred on Tamko by Plaintiffs and the Classes, and Tamko has appreciated these benefits.

139.   Tamko either knew or should have known that the payments rendered by Plaintiffs and the Classes were given and received with the expectation that the Shingles would perform as represented and warranted. For Tamko to retain the benefit of the payments under these circumstances described herein would be inequitable.

140.   Tamko's acceptance and retention of these benefits under the circumstances make it inequitable for Tamko to retain the benefits without payment of

the value to Plaintiffs and the Classes.

141.    Tamko, by the conduct complained of herein, has been unjustly enriched in a manner that warrants restitution.

142.    Plaintiffs and the Classes are entitled to recover from Tamko all amounts wrongfully collected and improperly retained by Tamko, plus interest thereon.

143.    As a proximate consequence of Tamko's improper conduct, Plaintiffs and the Class members have been injured. Tamko has been unjustly enriched, and in equity, should not be allowed to retain this benefit.

## COUNT VII
## DECLARATORY RELIEF
### (Pleading in the Alternative)

144.    Plaintiffs, individually and on behalf of all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

145.    Tamko has acted or refused to act on grounds that apply generally to the Declaratory Relief Class, so that final injunctive relief or corresponding declaratory relief is appropriate within the meaning of Fed. R. Civ. P. 23.

146.    Plaintiffs seek a ruling that:

a.    The Shingles have defects that result in premature failure;

b.    Tamko's Limited Warranty fails of its essential purpose;

c.    Certain provisions of Tamko's Limited Warranty are void as unconscionable;

     d.       Tamko must notify owners of the defects;

     e.       Tamko will reassess all prior claims and pay the full costs of repairs and damages; and

     f.       Tamko will pay the costs of inspection to determine whether any Class member's Shingles need replacement.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, Stephen Dye and Douglas Bohn, on behalf of themselves and all others similarly situated, seek judgment against Defendant as follows:

A.       For an order certifying the Classes, naming Plaintiffs as the Class representatives, and appointing Plaintiffs' attorneys as counsel for the Classes;

B.       For an order finding in favor of Plaintiffs;

C.       For an order declaring that Tamko's conduct violates the statutes referenced herein;

D.       For actual, compensatory, consequential, and/or incidental damages to Plaintiffs and members of the proposed Classes;

E.       For restitution to Plaintiffs and members of the proposed Classes;

F.       For declaratory and injunctive relief as permitted by law or equity, including a preliminary and permanent injunction enjoining Defendant from continuing the unlawful practices as set forth herein and directing Defendant to identify, with Court supervision, victims of their conduct and pay them restitution and disgorgement of all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful;

G.      For punitive damages in an amount to be determined at trial;

H.      For pre-judgment and post-judgment interest;

I.      For attorneys' fees and costs;

J.      For such further relief as may be fair and reasonable.

<u>**DEMAND FOR TRIAL BY JURY**</u>

Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated: March 10, 2017                          Respectfully submitted,

                                               *s/ Panagiotis V. Albanis*_____
                                               Panagiotis "Pete" V. Albanis
                                               Florida Bar No. 77354
                                               **Morgan & Morgan – Complex Litigation**
                                               12800 University Drive, Suite 600
                                               Fort Myers, Florida 33907
                                               Tel:    (239) 432-6605
                                               Fax:    (239) 433-6836
                                               Email:  palbanis@forthepeople.com

                                               Frank M. Petosa
                                               Florida Bar No. 972754
                                               **Morgan & Morgan – Complex Litigation**
                                               600 North Pine Island Road, Suite 400
                                               Plantation, Florida 33324
                                               Tel:    (954) 318-0268
                                               Fax:    (954) 327-3018
                                               Email:  fpetosa@forthepeople.com

                                               Daniel C. Calvert
                                               Florida Bar No. 116544
                                               **Parker Waichman LLP**
                                               27300 Riverview Center Blvd, Suite 103
                                               Bonita Springs, Florida 34134
                                               Tel.:   (239) 390-1000
                                               Fax:    (239) 390-0055
                                               Email: dcalvert@yourlawyer.com

Daniel K. Bryson
North Carolina Bar No. 15781
Scott C. Harris
Florida Bar Number 0103905
**Whitfield Bryson & Mason LLP**
900 W. Morgan Street
Raleigh, North Carolina 27603
Tel.:   919-600-5000
Fax:   919-600-5035
Email: dan@wbmllp.com
         scott@wbmllp.com

Christopher L. Coffin
**Pendley, Baudin & Coffin, L.L.P.**
1515 Poydras Street, Suite 1400
New Orleans, Louisiana 70112
Tel.:   (504) 355-0086
Fax:   (504) 523-0699
Email: ccoffin@pbclawfirm.com
*Attorneys for Plaintiffs*

Charles E. Schaffer, Esquire
**Levin Sedran & Berman**
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106
Tel.:   (215) 592-1500
Fax:   (218) 592-4663
Email: cschaffer@lfsblaw.com
*Attorneys for Plaintiffs*