**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

STEPHEN DYE and DOUGLAS BOHN, on
behalf of themselves and all others similarly
situated,

      Plaintiffs,

v.

TAMKO BUILDING PRODUCTS, INC.,

      Defendant.

Case No. 8:17-cv-00590-MSS-AEP

---

**DEFENDANT'S MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS THE
PROCEEDING OR, IN THE ALTERNATIVE, STAY THE PROCEEDING**

Pursuant to the Federal Arbitration Act ("FAA"), TAMKO Building Products, Inc.

("TAMKO") respectfully moves the Court for an order compelling plaintiffs to arbitrate their

claims on an individual basis and to dismiss this proceeding or, in the alternative, stay the

proceeding pending arbitration.  As set forth below, plaintiffs' suit arises from their purchase and

use of TAMKO shingles that are subject to an agreement mandating that all claims against

TAMKO be resolved by individual, binding arbitration.  Numerous courts have recognized the

validity of the arbitration provision included in TAMKO's limited warranties, and TAMKO

respectfully urges this Court to do the same.  *See, e.g.*, *Hoekman v. Tamko Bldg. Prods., Inc.*,

No. 2:14-cv-01581-TLN-KJN, 2015 U.S. Dist. LEXIS 113414, at *13-16 (E.D. Cal. Aug. 24,

2015); *Overlook Terraces, Ltd. v. Tamko Bldg. Prods., Inc*., No. 3:14-CV-00241-CRS, 2015 U.S.

Dist. LEXIS 119325, at *10 (W.D. Ky. May 21, 2015), *report and recommendation adopted by*

No. 3:14CV-241-CRS, 2015 U.S. Dist. LEXIS 119323 (W.D. Ky. July 22, 2015); *Krusch v.

TAMKO Bldg. Prods., Inc.*, 34 F. Supp. 3d 584, 588-90 (M.D.N.C. 2014); *Am. Family Mut. Ins.

Co. v. Tamko Bldg. Prods., Inc*., 178 F. Supp. 3d 1121, 1129 (D. Colo. 2016); *One Belle Hall*

*Prop. Owners Ass'n v. Trammell Crow Residential Co.*, 791 S.E.2d 286, 294 (S.C. Ct. App. 2016).

## BACKGROUND

On March 10, 2017, plaintiffs filed a putative class action complaint in this Court alleging that TAMKO Heritage shingles were "manufactured with less than the required amount of asphalt and in a manner that permits moisture intrusion, creating gas bubbles that result in blistering and cracking" such that "Plaintiffs and Class members must repair or replace their Shingles sooner than reasonably expected." (*See* Compl. ¶¶ 11-13.) Plaintiffs assert claims for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), breach of express warranty, strict products liability, design defect, manufacturing defect, failure to warn, negligence/negligent design or negligence *per se* and negligent misrepresentation. (*See id.* ¶¶ 1, 74-136.)

Plaintiff Stephen Dye alleges that he purchased and installed TAMKO's Heritage Series shingles on the roof of his home in Tampa, Florida, in 2013. (*Id.* ¶¶ 20-21.) Dye's shingles came with a Limited Warranty with a 30-year warranty term. (*See* Dye TAMKO Limited Warranty (attached as Ex. 1).)[1] The Limited Warranty was printed – in its entirety – on the outside of the wrapper of every bundle of shingles purchased by Dye. (*See* Decl. of Titia Miller ("Miller Decl.") ¶ 10, May 3, 2017 (attached as Ex. 2).)

---

[1]     "[T]he Eleventh Circuit found courts should apply a Rule 56 summary judgment standard in evaluating motions to compel arbitration that are considered as factual attacks on subject matter jurisdiction." *Owings v. T-Mobile USA, Inc.*, 978 F. Supp. 2d 1215, 1222 (M.D. Fla. 2013) (citing *Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 F. App'x 782, 785-86 (11th Cir. 2008)). Thus, the Court may consider the evidentiary materials submitted by TAMKO in support of this motion. *See id.* Moreover, and in any event, the Limited Warranties are properly subject to judicial notice at the pleading stage because they are expressly referred to and form the basis of plaintiffs' claims in their Complaint. (*E.g.*, Compl. ¶ 99.) *See, e.g.*, *Lawrence Holdings, Inc. v. ASA Int'l, Ltd.*, No. 8:14-cv-1862-T-33EAJ, 2014 U.S. Dist. LEXIS 154246, at *11-12 (M.D. Fla. Oct. 30, 2014) (taking judicial notice of agreements referenced in complaint).

In the center of each wrapper was a bold rectangular box that contained the following language in large print: "IMPORTANT" and "READ CAREFULLY BEFORE OPENING BUNDLE." (*See id.* ¶ 11.)  Among the information conveyed to purchasers in this section was that a "[c]op[y] of the . . . Limited Warranty [is] printed on this wrapper and [is] available by contacting TAMKO's Technical Services Department by phone at 800-641-4691 or visit[ing] our web site at www.tamko.com." (*See id.*)

The Limited Warranty required Dye to notify TAMKO of any claims "within thirty (30) days following discovery of the potential problem with the Shingles." (Dye TAMKO Limited Warranty at 3.)  Dye's Limited Warranty also contained the following arbitration clause in all capital letters:

> **MANDATORY BINDING ARBITRATION:** EVERY CLAIM, CONTROVERSY, OR DISPUTE OF ANY KIND WHATSOEVER (EACH AN "ACTION") BETWEEN YOU AND TAMKO (INCLUDING ANY OF TAMKO'S EMPLOYEES AND AGENTS) RELATING TO OR ARISING OUT OF THE PRODUCT SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION, REGARDLESS OF WHETHER THE ACTION SOUNDS IN WARRANTY, CONTRACT, STATUTE OR ANY OTHER LEGAL OR EQUITABLE THEORY.

(*Id.* at 6.)  Dye's Limited Warranty further stated in all capital letters that "ANY ACTION BROUGHT BY YOU AGAINST TAMKO WILL BE ARBITRATED (OR, IF ARBITRATION OF THE ACTION IS NOT PERMITTED BY LAW, LITIGATED) INDIVIDUALLY AND YOU WILL NOT CONSOLIDATE, OR SEEK CLASS TREATMENT FOR, ANY ACTION UNLESS PREVIOUSLY AGREED TO IN WRITING BY BOTH TAMKO AND YOU." (*Id.*)

Douglas Bohn purchased and installed Heritage shingles on the roof of his home in Middleburg, Florida, in March 2009.  (Compl. ¶¶ 25-26.)  Bohn's shingles came with a Limited Warranty with a 30-year warranty term.  (*See* Bohn TAMKO Limited Warranty (attached as Ex. 3).)  Like Dye's Limited Warranty, Bohn's Limited Warranty was printed – in its entirety – on

the outside of the wrapper of every bundle of shingles purchased by Bohn.  (*See* Miller Decl. ¶

10.)  In the center of each wrapper was a bold rectangular box that contained the following

language in large print:  "IMPORTANT" and "READ CAREFULLY BEFORE OPENING

BUNDLE."  (*See id.* ¶ 11.)  Among the information conveyed to purchasers in this section was

that a "[c]op[y] of the . . . Limited Warranty [is] printed on this wrapper and [is] available by

contacting TAMKO's Technical Services Department by phone at 800-641-4691 or visit[ing]

our web site at www.tamko.com."  (*See id.*)

The Limited Warranty likewise required Bohn to notify TAMKO of any claims "within

thirty (30) days following discovery of the problem with the Shingles."  (Bohn TAMKO Limited

Warranty at 3.)  Bohn's Limited Warranty also contained the following arbitration clause in all

bold, capital letters:

> **MANDATORY BINDING ARBITRATION: EVERY CLAIM,
> CONTROVERSY, OR DISPUTE OF ANY KIND
> WHATSOEVER INCLUDING WHETHER ANY
> PARTICULAR MATTER IS SUBJECT TO ARBITRATION
> (EACH AN "ACTION") BETWEEN YOU AND TAMKO
> (INCLUDING ANY OF TAMKO'S EMPLOYEES AND
> AGENTS) RELATING TO OR ARISING OUT OF THE
> SHINGLES OR THIS LIMITED WARRANTY SHALL BE
> RESOLVED BY FINAL AND BINDING ARBITRATION,
> REGARDLESS OF WHETHER THE ACTION SOUNDS IN
> WARRANTY, CONTRACT, STATUTE OR ANY OTHER
> LEGAL OR EQUITABLE THEORY**.

(*Id.* at 5.)  It further stated in all capital letters that "ANY ACTION BROUGHT BY YOU

AGAINST TAMKO WILL BE ARBITRATED (OR, IF ARBITRATION OF THE ACTION IS

NOT PERMITTED BY LAW, LITIGATED) INDIVIDUALLY AND YOU WILL NOT

CONSOLIDATE, OR SEEK CLASS TREATMENT FOR, ANY ACTION UNLESS

PREVIOUSLY AGREED TO IN WRITING BY BOTH TAMKO AND YOU."  (*Id.*)

Bohn alleges that following the purchase and installation of his shingles in March 2009,

he "discovered that his Shingles were cracking, blistering, prematurely failing, and experiencing

severe granule loss." (Compl. ¶ 28.) On or about August 22, 2014, Bohn submitted a completed warranty claim form to TAMKO, along with photographs of his shingles. (*Id*. ¶¶ 29-30; *see also* TAMKO Shingle Limited Warranty Claim Form, TAMKO-000932560 (attached as Ex. 4).) On or about September 17, 2014, TAMKO offered Bohn a certificate entitling him to 23 squares of new shingles and $100. (*See* TAMKO-000932578-79 (attached as Ex. 5); TAMKO-000932577 (attached as Ex. 6).) Bohn subsequently deposited a $100 check from TAMKO. (*See* email from D. Bohn to S. Parker, Jan. 19, 2015, TAMKO-000932558 ("Bohn 1/19/15 email") (attached as Ex. 7) (Mr. Bohn indicating he "[d]eposited the check today").)[2]

TAMKO is a Missouri corporation with its principal place of business in Joplin, Missouri. (Compl. ¶ 31.) TAMKO manufactures Heritage shingles in Missouri, Kansas, Texas, Alabama, and Maryland, and has sold TAMKO shingles in every state in the United States except Alaska and Hawaii. (Miller Decl. ¶¶ 5-6.) Plaintiff Bohn's shingles were manufactured at TAMKO's plant in Tuscaloosa, Alabama. (*Id*. ¶ 8.)

## ARGUMENT

The FAA, 9 U.S.C. § 3, applies to arbitration agreements involving interstate commerce. *Id*. § 2. The FAA's interstate-commerce provision has been interpreted to be "'the functional equivalent of the more familiar term "affecting commerce" – words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power.'" *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1370 (11th Cir. 2005) (quoting *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 874 (11th Cir. 2005)). Here, TAMKO's Limited Warranties and their arbitration clauses clearly involve interstate commerce in light of the interstate nature of TAMKO's business. TAMKO is based in Missouri, as set forth above; plaintiff Bohn's

---

[2]  Prior to depositing the $100, Bohn sought and received a second check from TAMKO that did not include release language on the back.

shingles were manufactured in Alabama and plaintiff Dye's shingles were manufactured at one of TAMKO's five manufacturing plants, none of which is in Florida.  (*See* Miller Decl. ¶¶ 6, 8.)  Thus, the FAA applies.  *See, e.g.*, *Corbin v. Affiliated Comput. Servs., Inc.*, No. 6:13-cv-180-Orl-36TBS, 2013 WL 3804862, at *15 (M.D. Fla. July 19, 2013) (contract involved interstate commerce because defendant was a multi-national corporation that "operate[d] in every state and several countries, serving people from inside and outside Florida, utilizing interstate mail and travel systems, and recruiting and advertising outside Florida") (citation omitted).

Importantly, "[f]ederal policy favors arbitration over litigation."  *Kyer v. Teen Challenge of Fla., Inc.*, No. 8:07-cv-1824-T-23-TBM, 2008 WL 1849024, at *1 (M.D. Fla. Apr. 24, 2008); *see also Picard v. Credit Sols., Inc.*, 564 F.3d 1249, 1253 (11th Cir. 2009) ("[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.") (citation omitted).  Given this liberal "'policy favoring arbitration agreements,'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345-46 (2011) (citation omitted), "courts must 'construe arbitration clauses generously, ***resolving all doubt in favor of arbitration***,'" *Sanchez v. J.P. Morgan Chase Bank, N.A.*, No. 14-20468-CIV, 2014 WL 4063046, at *4 (S.D. Fla. Aug. 15, 2014) (some emphasis added) (quoting *Becker v. Davis*, 491 F.3d 1292, 1305 (11th Cir. 2007)).  In other words, "[t]o the extent there may be any ambiguities with respect to the scope of an arbitration provision, such ambiguities should be resolved in favor of arbitration."  *Ebel v. Nat'l Union Fire Ins. Co. of Pittsburgh Pa.*, No. 8:12-cv-2786-T-30TBM, 2013 WL 221451, at *1 (M.D. Fla. Jan. 18, 2013).

Consistent with these principles, federal courts in this Circuit routinely favor enforcement of arbitration clauses under the FAA.  *See, e.g.*, *id.* at *2 (granting motion to compel arbitration and staying case); *Abdullah v. Am. Express Co.*, No. 3:12-cv-1037-J-34MCR, 2012 WL

6867675, at *5-6 (M.D. Fla. Dec. 19, 2012) (same), *report and recommendation adopted by* No. 3:12-cv-1037-J-34MCR, 2013 WL 173225 (M.D. Fla. Jan. 16, 2013); *Jones v. Sallie Mae, Inc.*, No. 3:13-cv-837-J-99MMH-MCR, 2013 WL 6283483, at *10 (M.D. Fla. Dec. 4, 2013) (same); *Wilcox v. Taco Bell of Am., Inc.*, No. 8:10-cv-2383-T-33MAP, 2011 WL 3566687, at *5 (M.D. Fla. Aug. 15, 2011) (same); *Crum Staffing, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 8:06-CV-1222-T-17TGW, 2006 WL 3289265, at *3 (M.D. Fla. Nov. 9, 2006) (same); *Ferriol v. Parrillada Las Vacas Gordas, Inc.*, No. 15-20636-CIV, 2015 WL 1968848, at *4 (S.D. Fla. Apr. 30, 2015) (granting motion to compel and dismissing complaint); *Solymar Invs., Ltd. v. Banco Santander S.A.*, No. 10-20695-CIV, 2011 WL 1790116, at *1 (S.D. Fla. Mar. 14, 2011) (same), *report and recommendation adopted by* No. 10-20695-CIV, 2011 WL 1791290 (S.D. Fla. May 10, 2011), *aff'd*, 672 F.3d 981 (11th Cir. 2012).

By its terms, "[t]he FAA 'leaves no place for the exercise of discretion [by a district court], but instead mandates that district courts *shall* direct the parties to proceed to arbitration'" on issues as to which an arbitration agreement has been signed. *Crum Staffing*, 2006 WL 3289265, at *2 (citation omitted). "The party opposing arbitration bears the burden of proving that arbitration is improper." *Robinson v. Anytime Rentals, Inc.*, No. 2:14-cv-528-FtM-38CM, 2015 WL 4393476, at *2 (M.D. Fla. July 15, 2015); *see also, e.g.*, *Dorward v. Macy's Inc.*, No. 2:10-cv-669-FtM-29DNF, 2011 WL 2893118, at *4 (M.D. Fla. July 20, 2011) (finding that party resisting arbitration bears burden to show that arbitration provision is invalid). "Accordingly, the FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008).

As set forth more fully below, this case is subject to arbitration because: (1) the parties entered into valid arbitration agreements; and (2) the arbitration agreements encompass all of plaintiffs' claims against TAMKO, as well as threshold issues of arbitrability. Accordingly, the Court should compel plaintiffs to individually arbitrate their claims and dismiss this case or, in the alternative, stay proceedings pending arbitration.

## I.   THE PARTIES ENTERED INTO VALID AND ENFORCEABLE ARBITRATION AGREEMENTS.

Florida law establishes that a "'contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.'" *TracFone Wireless, Inc. v. Pak China Grp. Co*., 843 F. Supp. 2d 1284, 1298 (S.D. Fla. 2012) (quoting Fla. Stat. § 672.204(1)). In addition to mutual assent, a contract must be supported by consideration to be enforceable. *See, e.g.*, *Ben-Yishay v. Mastercraft Dev., LLC*, 553 F. Supp. 2d 1360, 1369 (S.D. Fla. 2008). Here, it is clear that plaintiffs and TAMKO reached agreements to arbitrate that are supported by consideration and are therefore enforceable under Florida law.

### A.   The Parties Agreed To Arbitrate.

The parties agreed to arbitrate, as evidenced by their respective decisions to retain TAMKO shingles and their attempts to enforce their rights under their Limited Warranties.

*First*, plaintiffs' respective decisions to purchase and retain TAMKO shingles created agreements to arbitrate because the terms of the TAMKO Limited Warranties, including the mandatory arbitration language, were visible on the packaging. It is clear under Florida law that a manufacturer may enter into an enforceable contract with a consumer by printing specific terms on the packaging of a product that consumers may either accept by purchasing and opening a package, or reject by declining to purchase or returning the item. *See TracFone Wireless*, 843 F.

Supp. 2d at 1298-99 (purchasers of prepaid wireless telephone were bound by terms of agreement on packaging of product); *Salco Distribs., LLC v. iCode, Inc.*, No. 8:05 CV 642 T 27TGW, 2006 WL 449156, at *2 n.5 (M.D. Fla. Feb. 22, 2006) (purchaser of software product was bound by terms of shrinkwrap agreement upon opening the packaging of the product); *Mgmt. Comput. Controls, Inc. v. Charles Perry Constr., Inc.*, 743 So. 2d 627, 629 (Fla. 1st DCA 1999) (enforcing forum selection clause contained in a license agreement affixed to the outside of the software packaging where packaging displayed a sticker that provided "[b]y opening this packet, you indicate your acceptance of the [company's] license agreement").

In *TracFone Wireless*, for example, the court examined whether a manufacturer of prepaid wireless telephones had entered into a valid contract under Florida law with consumers by including certain language on its packaging that limited the tampering or alteration of the software or hardware of the phones.  843 F. Supp. 2d at 1298-99.  The court concluded that it had.  *Id*.  In so holding, the court determined that there was manifestation of an agreement to enter into a contract because "[t]he outside retail packaging of [the Phones] contains conspicuous language restricting the use of the Phones . . . [and] provides in part '[b]y purchasing or opening this package, you are agreeing to these terms and the terms and conditions of service in the enclosed user guide.'"  *Id*. at 1298 (citation omitted).  Accordingly, the court found that the consumers accepted the terms on the package "as soon as [they] open[ed] the product."  *Id*.

The same conclusion is warranted here.  Like the consumers in *TracFone Wireless*, consumers of TAMKO shingles are provided with notice of the conditions by which the shingles can be purchased through the language on the outside of the shingle package, which they can either accept, by purchasing and installing the shingles, or reject, by declining to purchase or returning the shingles.  843 F. Supp. 2d at 1298-99.  Specifically, TAMKO prints the ***entire***

*Limited Warranty*, including the mandatory arbitration clause (in all capital letters), on the outside of every package of shingles – including those purchased by plaintiffs.  (*See* Miller Decl. ¶ 10.)  Each package of shingles also alerts consumers, among other things, that the information contained on the package is "IMPORTANT" and to "READ CAREFULLY BEFORE OPENING BUNDLE."  (*See id.* ¶ 11.)  The packaging further advises in the boxed area labeled "IMPORTANT" that copies of the Limited Warranty "are printed on this wrapper and are available by contacting TAMKO's Technical Services Department by phone at 800-641-4691 or visit our web site at www.tamko.com."  (*Id.*)  Consumers are thus provided with ample opportunity to reject the contract.  Because plaintiffs purchased and retained TAMKO shingles bearing these terms, they are bound by them.  *See TracFone Wireless*, 843 F. Supp. 2d at 1298-99.

As noted above, courts across the country addressing claims like these against TAMKO have held that the Limited Warranty's presentation on shingle packaging was sufficient to create an enforceable agreement with consumers who purchased the shingles and opened and retained them.  *See Hoekman*, 2015 U.S. Dist. LEXIS 113414, at *13-16 (applying California law and compelling arbitration; purchasers were bound by terms in part because they were visible on shingle packaging); *Overlook Terraces*, 2015 U.S. Dist. LEXIS 119325, at *10 (concluding that arbitration clause on packaging was enforceable under Kentucky law); *Krusch*, 34 F. Supp. 3d at 588-90 (same under North Carolina law); *Am. Family*, 178 F. Supp. 3d at 1129 (same under Colorado law); *One Belle Hall*, 791 S.E.2d at 294 (same under South Carolina law).[3]  Courts

---

[3]       *See also* Order Granting TAMKO's Mot. to Compel Arbitration & Stay Proceedings at 1, *Griffin v. TAMKO Bldg. Prods., Inc.*, No. A-0198770 (Tex. Dist. Ct. Jan. 11, 2017) (compelling arbitration without opinion); Dkt. Entry Granting Mot. to Compel, *Davis v. TAMKO Bldg. Prods., Inc.*, No. 14CT-CC00264 (Mo. Cir. Ct. Sept. 5, 2014).  Although *Hobbs v. Tamko Building Products, Inc*., 479 S.W.3d 147, 151 (Mo. Ct. App. 2015), *transfer denied* (Jan. 26, 2016), *cert. pending*, held that the plaintiffs did not accept the terms of an arbitration clause that was printed on the wrapper of every bundle of shingles, that decision conflicts with the overwhelming case law,

*(cont'd)*

have also reached similar conclusions in a broad range of cases against other defendants.  *See, e.g.*, *Ariz. Cartridge Remanufacturers Ass'n v. Lexmark Int'l Inc.*, 421 F.3d 981, 987 (9th Cir. 2005) (language on packaging of printer cartridges that limited the post-sale use of the cartridges was enforceable because "[t]he consumer [could] read the terms and conditions on the box before deciding whether to accept them"); *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1149-50 (7th Cir. 1997) (arbitration clause located inside the packaging of a computer was enforceable where consumer retained the computer and failed to object to arbitration; explaining that "[p]ractical considerations support allowing vendors to enclose the full legal terms with their products"); *Herron v. Best Buy Stores, L.P.*, No. 12-CV-02103-GEB-JFM, 2014 U.S. Dist. LEXIS 75346, at *3-4 (E.D. Cal. May 30, 2014) ("[C]ontracts contained in [] boxes . . . are no less enforceable than any other type of contract.") (citation omitted); *Carwile v. Samsung Telecomms. Am., LLC*, No. 12-05660-CJC(JPRx), 2013 U.S. Dist. LEXIS 185089, at *9, *16 (C.D. Cal. July 9, 2013) (enforcing arbitration provision contained in warranty, which was included in the box with the plaintiff's phone); *Wojtalewicz v. Pioneer Hi-Bred Int'l, Inc.*, 939 F. Supp. 2d 965, 971-72 (D. Neb. 2012) (enforcing an arbitration clause that "was included within the contract; both in the terms and conditions sheet and on the back of the bags").  This Court should reach the same result here.

*Second*, the parties' agreement to arbitrate is also evidenced by plaintiffs' attempt to enforce the Limited Warranty.  Citing equitable-estoppel principles, courts have routinely held that parties may not avoid arbitration provisions contained in the same agreement they seek to

_____
*(cont'd from previous page)*
discussed *supra*, and was wrongly decided, as subsequent decisions have recognized.  *E.g.*, *Am. Family*, 178 F. Supp. 3d at 1126 n.5 (explaining that *Hobbs* appears to rest on peculiar provisions of Missouri law and, to the extent that it does not, finding "the analysis of the decision superficial and thus simply unpersuasive").  A petition for review of the *Hobbs* decision is currently pending before the U.S. Supreme Court.

enforce.  *See, e.g.*, *Thome v. Layne Energy Sycamore, LLC*, No. 05-cv-02244-PSF-MJW, 2006 U.S. Dist. LEXIS 35015, at *9 (D. Colo. May 30, 2006) (nonsignatories who sought to "derive a benefit" from an agreement were subject to that agreement's arbitration clause under estoppel theory); *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000) (non-signatory estopped from refusing to comply with an arbitration agreement where he "consistently maintained that other provisions of the same contract should be enforced to benefit him"); *Wojtalewicz v. Pioneer Hi-Bred Int'l, Inc.*, 959 F. Supp. 2d 1215, 1225-26 (D. Neb. 2013) ("By asserting the right to recover the benefits arising from the [defendant's] sales contracts, they are likewise bound by the obligations of those contracts, including the mandatory arbitration clause.").  After all, "[t]o allow [a plaintiff] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act."  *Int'l Paper*, 206 F.3d at 418 (citation omitted).

In *International Paper*, for example, the purchaser of an industrial saw sued the manufacturer over a contract between the manufacturer and the distributor, alleging breach of warranty, among other claims.  *Id.* at 413.  The manufacturer sought to compel arbitration based on a provision in the manufacturer-distributor contract, but the buyer argued that it had no knowledge of the arbitration agreement and could not be bound by it.  *Id*. at 414-15.  The district court disagreed on equitable-estoppel grounds, and the Fourth Circuit affirmed.  *Id* at 417-18.  Focusing on the plaintiff's allegations that the defendant had, among other things, "failed to honor the warranties in the . . . contract," the court held that the plaintiff could not "seek to enforce those contractual rights and avoid the contract's requirement that 'any dispute arising out of' the contract be arbitrated."  *Id*. at 418.

The same principles apply here.  Both plaintiffs allege that TAMKO breached express warranties by, for example, failing to comply with its obligations under the Limited Warranty and, as a result, that they "suffered actual and consequential damages."  (Compl. ¶¶ 99, 106.) Because both plaintiffs seek to enforce TAMKO's Limited Warranties, they are bound by the agreements to arbitrate contained within the same Limited Warranties.  *See also, e.g.*, *Damon v. Strucsure Home Warranty, LLC*, 338 P.3d 123, 127-28 (N.M. Ct. App. 2014) ("Plaintiffs, having voluntarily chosen to seek a direct benefit from the warranty by attempting to enforce its terms against [the defendant], may not now seek to repudiate one of the warranty's provisions.  If Plaintiffs wished to exempt themselves from the arbitration clause, they could have chosen not to claim and enforce any of the rights under the warranty."); *Seney v. Rent-A-Ctr., Inc*., 909 F. Supp. 2d 444, 453-54 (D. Md. 2012) (non-signatories to a contract could not pursue claim for breach of warranty without also being subject to the agreement to arbitrate), *aff'd*, 738 F.3d 631 (4th Cir. 2013); *Olshan Found. Repair & Waterproofing v. Otto*, 276 S.W.3d 827, 831-32 (Ky. Ct. App. 2009) (plaintiffs' decision to seek warranty repairs "br[ought] with it the obligation to resolve disputes in accordance with the contracts' terms").

Bohn is further estopped from avoiding his agreement to arbitrate because, even before filing suit, he manifested his acceptance of the terms of the Limited Warranty (including its arbitration clause) by submitting a claim to TAMKO pursuant to its provisions.  As a federal court in Kentucky explained in reaching the same conclusion with respect to the arbitration clause in TAMKO's Limited Warranty, a purchaser of TAMKO shingles "cannot both seek to enforce the warranty while at the same time carving out the compulsory arbitration provision contained in it."  *Overlook Terraces*, 2015 U.S. Dist. LEXIS 119325, at *11.  Rather, "when an individual seeks to enforce an agreement which contains an arbitration provision, that individual

is bound by such provision" – even where "he or she was [not a] named party to the agreement." *Id*.; *accord, e.g.*, *Carwile*, 2013 U.S. Dist. LEXIS 185089, at *11-12 (holding that consumer consented to cellular telephone warranty where, *inter alia*, she contacted an authorized phone service facility after allegedly beginning to experience the defect – as required under the terms of the warranty – and sought to enforce her rights under the warranty).

Here, after Bohn allegedly began to experience problems with his shingles, he contacted TAMKO pursuant to the Limited Warranty.  (*See* Compl. ¶¶ 29-30.)  He then completed a TAMKO Shingle Limited Warranty Claim Form, and sent the completed form along with photographs to TAMKO.  (*Id*.)  Thereafter, TAMKO sent Bohn a settlement package, and Bohn endorsed and cashed a $100 check in connection with his warranty claim.  (*See* Bohn 1/19/15 email.)  Bohn's efforts to enforce his rights under the Limited Warranty further demonstrate his consent to be bound by the Limited Warranty, including the arbitration provision.  *See Carwile*, 2013 U.S. Dist. LEXIS 185089, at *12.

**B.      The Parties' Agreement To Arbitrate Is Supported By Valid Consideration.**

The parties' arbitration agreements are also supported by valid consideration.  It is axiomatic under Florida law that the agreement of a party to submit to arbitration is sufficient consideration to support the other party's agreement to do the same.  *See, e.g.*, *Ben-Yishay*, 553 F. Supp. 2d at 1369 ("[T]he arbitration clause is valid because all parties have provided consideration through their promises to submit to arbitration."); *Lemmon v. Lincoln Prop. Co.*, 307 F. Supp. 2d 1352, 1355 (M.D. Fla. 2004) ("Where both parties are bound by contractual provisions, mutuality exists and those terms are held enforceable.") (citation omitted); *Bhim v. Rent-A-Ctr., Inc*., 655 F. Supp. 2d 1307, 1312-13 (S.D. Fla. 2009) ("Mutually binding promises to arbitrate provide consideration for one another, and give rise to an enforceable arbitration agreement."); *Santos v. Gen. Dynamics Aviation Servs. Corp*., 984 So. 2d 658, 661 (Fla. 4th

DCA 2008) (holding that there was sufficient consideration to support arbitration agreement because the agreement created "a mutual obligation to arbitrate").

Here, the arbitration provisions in TAMKO's Limited Warranties with plaintiffs state that all claims "***BETWEEN [THE PURCHASER] AND TAMKO***" arising from or relating to the shingles and the Limited Warranty "SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION."  (*See* Dye TAMKO Limited Warranty at 6 (emphasis added); *see also* Bohn TAMKO Limited Warranty at 5.)  This language not only obliges the consumer to submit each claim to arbitration but also requires TAMKO to do the same.  Accordingly, there is adequate consideration.[4]

## II.    THE ARBITRATION CLAUSE ENCOMPASSES ALL OF PLAINTIFFS' CLAIMS AGAINST TAMKO, AS WELL AS ISSUES OF ARBITRABILITY.

Because the Arbitration Clause is valid, requires arbitration of "EVERY CLAIM, CONTROVERSY, OR DISPUTE OF ANY KIND WHATSOEVER," and incorporates the rules of the American Arbitration Association ("AAA"), it evinces a clear and unmistakable agreement to have issues of arbitrability – which would encompass the question whether plaintiffs' claims are covered by the arbitration agreement – decided by an arbitrator, not the Court.  But even if determining the scope of the arbitration provision were within the purview of this Court, plaintiffs' claims clearly fall within it.

---

[4]    Nor can plaintiffs argue that the agreement is unconscionable.  Under Florida law, an agreement cannot be invalidated for unconscionability absent a showing of both procedural and substantive unconscionability.  *See, e.g.*, *Fla. Holdings III, LLC v. Duerst ex rel. Duerst*, 198 So. 3d 834, 838 (Fla. 2d DCA 2016).  "Procedural unconscionability focuses on the manner in which the contract containing an arbitration agreement was made," whereas "[s]ubstantive unconscionability focuses on the terms of the contract and requires a court to determine 'whether the contract terms are "so 'outrageously unfair' as to 'shock the judicial conscience.'"'"  *Id.* (citations omitted).  The burden of proving unconscionability lies with the party seeking to avoid arbitration.  *Id.*  There is no basis upon which to conclude that the arbitration agreements are either procedurally or substantively unconscionable, since plaintiffs were free to select other shingles sold by other manufacturers and because the TAMKO agreements obligate both parties to resolve all disputes by binding, individual arbitration.  Notably, although plaintiffs allege in their Complaint that the provisions limiting damages are unconscionable (Compl. ¶ 102) (an argument which lacks merit), they do not allege that the arbitration clause is unconscionable.

### A.    The Court Should Not Decide The Issue Of Scope Because It Has Been Delegated To The Arbitrator.

"[W]here there is clear and unmistakable evidence that the parties agreed to arbitrate the gateway question of arbitrability, the arbitrator – not the court – *has the exclusive authority to decide whether an agreement to arbitrate is enforceable*."  *Pantoja v. Rent-A-Ctr., Inc.*, No. 6:10-cv-1023-Orl-31GJK, 2010 WL 3043430, at *2 (M.D. Fla. July 30, 2010) (citation omitted). In determining whether such "clear and unmistakable" evidence exists, courts ask whether there is an express agreement to submit the question of arbitrability to an arbitrator.  *See, e.g.*, *Norfolk S. Ry. Co. v. Fla. E. Coast Ry., LLC*, No. 3:13-cv-576-J-34JRK, 2014 WL 757942, at *8 (M.D. Fla. Feb. 26, 2014) ("[A]n agreement to arbitrate the gateway question of arbitrability 'is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.'") (citation omitted).  In *Terminix International Co. v. Palmer Ranch Ltd. Partnership*, the Eleventh Circuit explained that contractual language that incorporates the AAA Rules is evidence of specific intent to submit the question of arbitrability to an arbitrator.  432 F.3d 1327, 1332 (11th Cir. 2005).

Here, plaintiffs' arbitration agreements evidence "clear and unmistakable" intent that the parties arbitrate all matters, including the question of the scope of the arbitration agreement. First, plaintiffs' arbitration agreements expressly require arbitration of "EVERY CLAIM, CONTROVERSY, OR DISPUTE OF ANY KIND WHATSOEVER."  (Dye TAMKO Limited Warranty at 6; Bohn TAMKO Limited Warranty at 5.)  Bohn's Limited Warranty is even more explicit, defining this language as "INCLUDING WHETHER ANY PARTICULAR MATTER IS SUBJECT TO ARBITRATION."  (Bohn TAMKO Limited Warranty at 5.)  Second, plaintiffs' arbitration clauses expressly require arbitration to be initiated "IN ACCORDANCE

WITH THE APPLICABLE RULES OF ARBITRATION OF THE AMERICAN

ARBITRATION ASSOCIATION" (*Id.*; *see also* Dye TAMKO Limited Warranty at 6

(incorporating similar language)) – akin to language that the Eleventh Circuit has found

indicative of an intent to arbitrate questions going to arbitrability.  *See Terminix*, 432 F.3d at

1332; *see also* AAA, Consumer Arbitration Rules 17 (Sept. 1, 2014),

https://www.adr.org/sites/default/files/Consumer%20Rules.pdf ("The arbitrator shall have the

power to rule on his or her own jurisdiction, including any objections with respect to the

existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or

counterclaim.").[5]  Accordingly, the Court should not reach the issue of whether plaintiffs' claims

fall within the scope of the arbitration agreements.  *See, e.g.*, *Am. Family*, 178 F. Supp. 3d at

1128-29 (reviewing a TAMKO Limited Warranty with a similar arbitration clause and

explaining that references to the JAMS and AAA rules "evidence 'clearly and unmistakably' the

parties' 'intent to arbitrate all matters, including the question of arbitrability'" and then

concluding that "matters going to the scope of the arbitration clause are not for this court, but for

the arbitrator") (citation omitted).  *See* AAA, Consumer Arbitration Rules 17 (Sept. 1, 2014),

https://www.adr.org/sites/default/files/Consumer%20Rules.pdf; *see also, e.g.*, *Rimel v. Uber*

*Techs., Inc.*, No. 6:15-cv-2191-Orl-41KRS, 2016 WL 6246812, at *8 (M.D. Fla. Aug. 4, 2016)

(delegation provision in arbitration agreement was evidence of parties' "clear and unmistakable

agreement that disputes not expressly excluded from arbitration will be decided by the arbitrator,

---

[5]      Dye's Limited Warranty similarly requires that arbitration be initiated "IN ACCORDANCE WITH THE
APPLICABLE RULES OF ARBITRATION OF THE AMERICAN ARBITRATION ASSOCIATION . . . , THE
JUDICIAL ARBITRATION AND MEDIATION SERVICE ["JAMS"] OR OTHER ARBITRATION SERVICE
AGREED TO IN WRITING BY TAMKO."  (Dye TAMKO Limited Warranty at 6.)  Like the AAA Rules, JAMS
Rule 11(b) provides that "[t]he Arbitrator has the authority to determine jurisdiction and arbitrability issues as a
preliminary matter," including "disputes over the . . . scope of the agreement under which Arbitration is sought."
*See* JAMS, JAMS Comprehensive Arbitration Rules & Procedures 14 (July 1, 2014),
https://www.jamsadr.com/files/Uploads/Documents/JAMS-Rules/JAMS_comprehensive_arbitration_rules-
2014.pdf.

not a court"), *report and recommendation adopted by* No. 6:15-cv-2191-Orl-41CEM, 2017 WL 1191384 (M.D. Fla. Mar. 31, 2017).

      **B.**    <u>**Plaintiffs' Claims Are In Any Event Well Within The Scope Of The Arbitration Clauses.**</u>

Even if the Court were to consider the issue of scope, there is no question that the broad language of the arbitration agreements embraces all of plaintiffs' claims, and that all of those claims are thus subject to arbitration.

Once a court determines that a valid arbitration agreement exists, and assuming that issues of scope have not been delegated to the arbitrator, the Court must assess whether the specific dispute falls within the scope of that agreement. *Vechten v. Elenson*, No. 12-80668-Civ-SCOLA, 2013 WL 12080758, at *1 (S.D. Fla. Oct. 16, 2013). In determining whether a claim falls within the scope of an arbitration agreement, courts look to the language of the arbitration provision. *Id*. For a claim to fall outside its scope, "only the ***most forceful evidence*** of a purpose to exclude the claim from arbitration can prevail." *Herrera Cedeno v. Morgan Stanley Smith Barney, LLC*, 154 F. Supp. 3d 1318, 1327 (S.D. Fla. 2016) (emphasis added) (citation omitted). Such evidence will be found ***only if*** parties "clearly express their intent to exclude categories of claims from their arbitration agreement." *Id*. (quoting *Paladino v. Avnet Comput. Techs., Inc*., 134 F.3d 1054, 1057 (11th Cir. 1998)).

Moreover, in construing an arbitration clause, "'any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration.'" *Id*. (citation omitted); *see also, e.g.*, *Vechten*, 2013 WL 12080758, at *2 ("Doubts concerning the scope of the arbitration agreement must be resolved in favor of arbitration."). This presumption of arbitration is "particularly applicable" where arbitration clauses are "broad." *Herrera*, 154 F. Supp. 3d at 1327; *see also, e.g.*, *Muniz v. Sharp Deal Auto Repair, Inc*., No. 14-20460-CIV-WILLIAMS, 2014 WL

12609466, at *2 (S.D. Fla. July 7, 2014) ("Such a presumption is 'particularly applicable' where the arbitration clause is broadly worded.") (citation omitted).

An arbitration clause is considered to be broad in scope if it includes phrases such as "arising from," "arising out of or relating to" or "arising out of or in connection with." *See, e.g.*, *Lambert*, 544 F.3d at 1198 (finding that the phrase "'arising from or related to' . . . express[es] a broad, all-inclusive desire to arbitrate disputes") (citation omitted); *Sanderson v. SPX Cooling Techs., Inc*., No. 2:07-cv-828-FtM-29DNF, 2009 WL 426006, at *4 (M.D. Fla. Feb. 19, 2009) ("The binding precedent in the Eleventh Circuit . . . has construed 'arising out of' and 'arising out of or in connection with' much more broadly and favoring arbitration.") (citation omitted); *Red Brick Partners-Brokerage, LLC v. Staubach Co.*, No. 4:08cv82-SPM-WCS, 2008 WL 2743689, at *3 (N.D. Fla. July 9, 2008) ("The arbitration clause in the Sublicense Agreement includes the 'arising out of or relating to' language and is thus a broad clause."); *Mercury Telco Grp., Inc. v. Empresa De Telecommunicaciones De Bogota S.A. E.S.P*., 670 F. Supp. 2d 1350, 1355 (S.D. Fla. 2009) (characterizing arbitration clause including the phrase "related to" as broad); *Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013) ("[A]n arbitration provision that is considered to be broad in scope typically requires arbitration for claims or controversies 'arising out of or relating to' the subject contract.") (citation omitted).

Here, the arbitration clauses contained in TAMKO's Limited Warranties are undoubtedly broad because they contain the phrases "arising from," "relating to" and "arising out of." Specifically, Dye's Limited Warranty states, in relevant part:

> EVERY CLAIM, CONTROVERSY, OR DISPUTE OF ANY KIND WHATSOEVER . . . ***RELATING TO OR ARISING OUT OF*** THE PRODUCT SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION, REGARDLESS OF WHETHER THE ACTION SOUNDS IN WARRANTY, CONTRACT, STATUTE OR ANY OTHER LEGAL OR EQUITABLE THEORY.

19

(Dye TAMKO Limited Warranty at 6 (emphasis added).)  Similarly, Bohn's Limited Warranty states, in relevant part:

> EVERY CLAIM, CONTROVERSY, OR DISPUTE OF ANY KIND WHATSOEVER . . . ***RELATING TO OR ARISING OUT OF*** THE SHINGLES OR TH[E] LIMITED WARRANTY SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION, REGARDLESS OF WHETHER THE ACTION SOUNDS IN WARRANTY, CONTRACT, STATUTE OR ANY OTHER LEGAL OR EQUITABLE THEORY.

(Bohn TAMKO Limited Warranty at 5 (emphasis added).)  Because "the Court faces a broad arbitration clause," it "should follow the presumption of arbitration and resolve doubts in favor of arbitration."  *Mercury Telco Grp.*, 670 F. Supp. 2d at 1355 (citation omitted).

Even without such a presumption, each of plaintiffs' claims unquestionably "relat[es] to or aris[es] out of" the "product" or "shingles."  Plaintiffs' first and fifth claims for relief allege that TAMKO misrepresented the quality or character of the shingles.  (Compl. ¶¶ 74-92, 130-36.)  Plaintiffs' second claim alleges that the shingles were not of the quality that TAMKO expressly warranted.  (*Id.* ¶¶ 93-107.)  And plaintiffs' third and fourth claims allege that TAMKO designed or manufactured the shingles negligently or defectively.  (*Id.* ¶¶ 108-29.)  Moreover, as noted above, both arbitration clauses expressly require arbitration of any such claim "REGARDLESS OF WHETHER THE ACTION SOUNDS IN WARRANTY, CONTRACT, STATUTE OR ANY OTHER LEGAL OR EQUITABLE THEORY."  Thus, all of plaintiffs' claims, including those sounding in tort, are encompassed by the arbitration clauses.  *See, e.g.*, *Nexsun Corp. v. Condo*, No. 8:10-cv-331-T-23AEP, 2010 WL 2103039, at *2 (M.D. Fla. May 25, 2010) (noting that a party cannot "'avoid broad language in an arbitration clause by attempting to cast its complaint in tort rather than contract'") (quoting *McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co.*, 741 F.2d 342, 344 (11th Cir. 1984)); *Olsher Metals Corp. v.*

*Olsher*, No. 01-3212-CIV, 2003 WL 25600635, at *5 (S.D. Fla. Mar. 26, 2003) (holding that conspiracy and tort claims were "subject to arbitration"), *aff'd*, 90 F. App'x 383 (11th Cir. 2003).

Notably, other courts construing TAMKO's Limited Warranties and arbitration clauses have reached the same conclusion and required arbitration of similar causes of action under the broad terms of these and similar arbitration clauses.  *See, e.g.*, *Hoekman*, 2015 U.S. Dist. LEXIS 113414, at *21-22 (ordering arbitration of statutory consumer protection and common-law negligence claims under TAMKO's Limited Warranty); *Krusch*, 34 F. Supp. 3d at 594-95 (ordering same for claims based on theories of breach of implied warranty of merchantability, breach of express warranty, unfair and deceptive trade practices, negligent misrepresentation, and alleged statutory violations); *Overlook Terraces*, 2015 U.S. Dist. LEXIS 119325, at *11-12 (ordering same for claims for breach of express warranty, breach of implied warranty, and negligence); *One Belle Hall*, 791 S.E.2d at 294 (same under South Carolina law).  To the extent it decides the scope issue, this Court should reach the same conclusion.

## III.   PLAINTIFFS SHOULD BE ORDERED TO ARBITRATE THEIR CLAIMS ON AN INDIVIDUAL BASIS AND THIS ACTION SHOULD BE DISMISSED OR, IN THE ALTERNATIVE, STAYED.

Finally, the FAA requires that arbitration proceed only "in accordance with the terms of the agreement."  9 U.S.C. § 4.  Here, the arbitration agreements with plaintiffs expressly provide that all claims "WILL BE ARBITRATED (OR, IF ARBITRATION OF THE ACTION IS NOT PERMITTED BY LAW, LITIGATED) INDIVIDUALLY AND YOU WILL NOT CONSOLIDATE, OR SEEK CLASS TREATMENT FOR, ANY ACTION UNLESS PREVIOUSLY AGREED TO IN WRITING BY BOTH TAMKO AND YOU."  (Dye TAMKO Limited Warranty at 6; Bohn TAMKO Limited Warranty at 5.)  Thus, although plaintiffs purport to bring claims on behalf of a class, they can only pursue arbitration on an individual basis. Because there can be no doubt that an agreement to arbitrate claims on an individual basis is

enforceable, *see, e.g.*, *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2311-12 (2013) (holding that class waivers are enforceable under the FAA), the Court should compel arbitration of plaintiffs' claims on a non-class basis, *see, e.g.*, *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011) (upholding the district court's order "enforc[ing] the class action waivers in the [agreements] and direct[ing] the [plaintiffs] to submit their claims to the arbitrator individually rather than as a class").[6]

In addition, because the broad arbitration clause encompasses all of plaintiffs' individual claims, this Court – in granting TAMKO's motion to compel – should dismiss the Complaint in its entirety. *See Samadi v. MBNA Am. Bank, N.A.*, 178 F. App'x 863, 866 (11th Cir. 2006) (affirming a district court order compelling arbitration and dismissing the underlying claims); *Kozma v. Hunter Scott Fin., L.L.C.*, No. 09-80502-CIV, 2010 WL 724498, at *2 (S.D. Fla. Feb. 25, 2010) (noting that "[t]he United States Court of Appeals for the Eleventh Circuit . . . has frequently affirmed where the district court compelled arbitration and dismissed the underlying case"); *see also, e.g.*, *Ferriol*, 2015 WL 1968848, at *4-5 (granting motion to compel and dismissing complaint); *Solymar Invs., Ltd.*, 2011 WL 1790116, at *1 (same).

Alternatively, pursuant to § 3 of the FAA, this Court should stay the proceedings pending arbitration. *See* 9 U.S.C. § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court . . . shall on application of one of the parties stay the trial of the action . . . ."); *see also, e.g.*, *Ebel*, 2013 WL 221451, at *2 (granting motion to compel arbitration and staying case); *Abdullah*, 2012 WL 6867675, at *5-6 (same); *Jones*, 2013 WL 6283483, at

---

[6]       The Court may also give effect to this provision by striking plaintiffs' class allegations prior to submitting the case to arbitration. *See Marc v. Uber Techs., Inc.*, No. 2:16-cv-579-FtM-99MRM, 2016 WL 7210886, at *4 (M.D. Fla. Dec. 13, 2016) (striking class allegations and compelling arbitration where the operative arbitration agreement explicitly barred class claims).

*10 (same); *Wilcox*, 2011 WL 3566687, at *5 (same); *Crum Staffing, Inc.*, 2006 WL 3289265, at *3 (same); *see also Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1238 (11th Cir. 2008) ("[W]hen a dispute is arbitrable, entry of a § 3 stay is mandatory.") (citing *Klay v. All Defendants*, 389 F.3d 1191, 1204 (11th Cir. 2004)).

<u>**CONCLUSION**</u>

For all of the reasons set forth above, the Court should enter an order compelling Plaintiffs to submit their individual claims to arbitration and dismiss the Complaint or, in the alternative, stay the proceeding pending arbitration.

Dated: May 3, 2017                  Respectfully submitted,

*/s/ Francis M. McDonald, Jr.*
FRANCIS M. McDONALD, JR., ESQ.
Florida Bar No. 0327093
Trial Attorney
SARAH A. LONG, ESQ.
Florida Bar No. 0080543
McDONALD TOOLE WIGGINS, P.A.
111 N. Magnolia Avenue, Suite 1200
Orlando, FL 32801
Telephone: (407) 246-1800
Facsimile: (407) 246-1895
fmcdonald@mtwlegal.com
slong@mtwlegal.com

JOHN H. BEISNER (*pro hac vice application pending*)
JESSICA D. MILLER (*pro hac vice application pending*)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C.  20005-2111

***Attorneys for Defendant, TAMKO BUILDING PRODUCTS, INC.***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 3, 2017, the foregoing was electronically filed with

the Clerk of Court via the CM/ECF system, which will notify:

Jordan L. Chaikin, Esq., Parker Waichman LLP, 27300 Riverview Center Blvd., Suite 103, Bonita Springs, FL 34134; jchaikin@yourlawyer.com

Daniel K. Bryson, Esq. & Scott C. Harris, Esq., Whitfield Bryson & Mason LLP, 3700 Glenwood Ave., Suite 410, Raleigh, NC 27612; dan@wbmllp.com; scott@wbmllp.com

Christopher L. Coffin, Esq., Pendley Baudin & Coffin, L.L.P., 1515 Poydras St., Suite 1400, New Orleans, LA 70112.

/s/ *Francis M. McDonald, Jr.*
FRANCIS M. MCDONALD, JR., ESQ.
Florida Bar No. 0327093
Trial Attorney
SARAH A. LONG, ESQ.
Florida Bar No. 0080543
MCDONALD TOOLE WIGGINS, P.A.
111 N. Magnolia Avenue, Suite 1200
Orlando, FL 32801
Telephone: (407) 246-1800
Facsimile: (407) 246-1895
fmcdonald@mtwlegal.com
slong@mtwlegal.com
*Attorneys for Defendant TAMKO Building Products, Inc.*