**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| STEPHEN DYE, and DOUGLAS BOHN, on behalf of themselves and all others similarly situated, <br>         Plaintiffs, <br>     v. <br><br> TAMKO BUILDING PRODUCTS, INC., <br><br>         Defendant. | **Case No.: 8:17-cv-00590-MSS-AEP** |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO**
**TAMKO'S MOTION TO COMPEL ARBITRATION AND DISMISS THE**
**PROCEEDING, OR, IN THE ALTERNATIVE, STAY THIS PROCEEDING**

Defendant Tamko Building Products, Inc. ("Tamko") has moved this Court for an order compelling Plaintiffs to arbitrate their claims on an individual basis and to dismiss this proceeding, or, in the alternative, stay the proceeding pending arbitration ("Tamko's Motion") (Doc. No. 11).

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

As it has done previously in other jurisdictions with mixed results, Tamko is seeking to end this litigation summarily by claiming that the Plaintiffs agreed to be bound by terms of a "Limited Warranty" document that purports to require arbitration – on an individual basis only – as the exclusive method of resolving any and all claims or disputes concerning the Tamko Heritage 30 AR Shingles ("the Shingles") to Plaintiffs (and the rest of the putative class). Not surprisingly, Tamko asserts that arbitration clauses have regularly been upheld by courts as valid expressions of contractual consent in commercial transactions. However, what

Tamko fails to appreciate, and in this case cannot overcome, is the fact that Tamko had to have actually formed an enforceable contract to force arbitration as part of the sales transaction with Plaintiffs, and those similarly situated.

As a summary of the relevant facts, Plaintiffs bought their Shingles through their roofers, they were not told or in any way informed that if there was any dispute regarding the Shingles that they would be bound to a mandatory arbitration clause, and would waive their rights to participate on behalf of a class. Each Plaintiff has declared under penalty of perjury that, among other things: (1) the Shingles were installed by a roofer; (2) they never gave their roofer authority to bind them to any arbitration clause; (3) they were not aware that Tamko's Limited Warranty contained an arbitration provision and did not intend to sacrifice their rights to file a lawsuit; (4) they would not have had Tamko Shingles installed on their roofs If they knew of there was an arbitration provision on the Shingles. *See* Plaintiffs' Affidavits of Stephen Dye and Douglas Bohn, Exhibits 1 & 2 respectively.

Tamko bears the burden of proving that a valid and enforceable agreement to arbitrate was formed between Plaintiffs and Tamko. It remains critical that before determining someone waived his or her Seventh Amendment right to a jury trial, the Court must determine that he or she knowingly consented to do so. *Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287, 299 (2010). The Supreme Court has also made it clear that "[w]hen deciding whether the parties agreed to arbitrate a certain matter . . ., courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); see also *Granite Rock*, 561 U.S. at 297

("[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties *agreed* to arbitrate that dispute.") (emphasis altered).

Here, Tamko cannot meet its burden of showing that Plaintiffs knowingly consented to waive their Seventh Amendment rights and to arbitrate their claims. First, Tamko cannot establish that Plaintiffs manifested unequivocal assent to the arbitration agreement, among other reasons, because Plaintiffs were unaware that there was an arbitration agreement. Second, there was not adequate consideration for Tamko's arbitration agreement. Third, even though Plaintiff Bohn submitted a warranty claim post-purchase, he was not aware that an arbitration clause existed, and did not "consent" to the arbitration clause merely because he submitted a warranty claim. Accordingly, Tamko's motion must be denied.

## II.    STATEMENT OF FACTS

Plaintiffs Stephen Dye and Douglas Bohn purchased the Shingles for installation on their properties in 2013 and March of 2009, respectively. Complaint ("Comp.") (Doc. No 1) ¶¶ 21, 26. Neither Plaintiff Dye nor Bohn received a copy of Tamko's purported Limited Warranty at the time of purchase and, as such, neither Plaintiff assented to or was ever made aware that an arbitration clause was allegedly included in the purported Limited Warranty. *See* Exhibits 1 & 2.

At the time of purchase, the Plaintiffs were only shown Tamko representations and marketing materials which identified the shingles as durable, reliable, free from defects and compliant with ASTM standards. Comp. ¶¶ 22, 27. In fact, Tamko's representations and marketing materials, unlike its Limited Warranty, were widely distributed to Florida building

professionals and salespersons, who in turn represented to consumers such as Plaintiffs the quality of the shingles and the shingles' lifetime of at least thirty years. Comp. ¶¶ 6-7.

Despite the representations of Tamko, Plaintiff Dye discovered that his shingles were cracking, blistering, and prematurely failing, and experiencing substantial discoloration and severe granule loss. Comp. ¶ 23. Plaintiff Dye also discovered granules from his shingles on his patio. Comp. ¶ 24.

Similarly, Plaintiff Bohn discovered that his shingles were cracking, blistering, prematurely failing, and experiencing severe granule loss. Comp. ¶ 28. Plaintiff Bohn contacted Tamko and made a claim after Tamko sent him the Limited Warranty claim form. Comp. ¶¶ 29-30. On or about September 17, 2014, Plaintiff Bohn received a letter from Tamko offering him a partial settlement of his claims. Comp. ¶ 30. However, Tamko refused to provide additional compensation for or otherwise remedy the problems caused by the defective shingles. Comp. ¶ 30. By filing a warranty claim, Bohn had no idea that the submission of a warranty claim would potentially require him to arbitrate any dispute concerning the Shingles or foreclose any other legal rights and would not have submitted a warranty claim if it would potentially foreclose his legal rights. *See* Exhibit 2 ¶¶ 7-8.

Plaintiffs Dye and Bohn filed the present Class Action Petition on behalf of themselves and all others similarly situated alleging that Tamko made various misrepresentations regarding the quality of the Shingles, including that the Shingles conformed to all applicable industry standards and building codes, and would last for at least 30 years. Comp. ¶¶ 22, 27, 72, 97. Despite making these statements and representations, Tamko knew or should have known these statements and representations were false, untrue,

inaccurate or deceptive. *Id.* Now, Tamko seeks to stop Plaintiffs before they get to court, relying on a purported Limited Warranty's arbitration clause that was not bargained for, given in exchange or otherwise agreed to by Plaintiffs or the putative class they represent.

### III.    ARGUMENT

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., ensures that written arbitration agreements in transactions involving interstate commerce are "valid, irrevocable, and enforceable." 9 U.S.C. § 2. Federal policy favors arbitration agreements and requires that the Court "rigorously enforce" them. *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987). The Eleventh Circuit has held that "a summary judgment-like standard is appropriate" when a district court must decide whether a trial is necessary to determine the existence of an arbitration agreement. *Herman v. SeaWorld Parks & Entm't, Inc.*, No. 8:14-cv-3028-T-35JSS, 2016 U.S. Dist. LEXIS 181173, at *9 (M.D. Fla. Aug. 26, 2016) (citing *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 2016 WL 3608961, at *6 (11th Cir. 2016)). Therefore, "a district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement." *Id.* (quoting *Bazemore*, 827 F.3d at 1333) (citing Fed. R. Civ. P. 56(a)).

Still, "arbitration is a matter of contract [and] the FAA's strong pro-arbitration policy only applies to disputes that the parties have agreed to arbitrate." *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004). Although federal law establishes the enforceability of arbitration agreements, state law governs the interpretation and formation of such agreements. *Employers Insurance of Wausau v. Bright Metal Specialities, Inc.*, 251 F.3d 1316, 1322 (11th

Cir. 2001). In ruling on a motion to compel arbitration, courts consider three factors: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived. *Dukes v. Sai Fort Myers B, LLC,* No. 2:14-CV-287-FTM-38, 2015 U.S. Dist. LEXIS 75780, 2015 WL 3650804, at *2 (M.D. Fla. June 11, 2015); *Florida Farm Bureau Ins. Cos. v. Pulte Home Corp., Inc.*, No. 8:04-cv-2357-T-EAJ, 2005 U.S. Dist. LEXIS 21903, 2005 WL 1345779, at *3 (M.D. Fla. June 6, 2005). In *Lawson v. Life of the South Insurance Company*, the Eleventh Circuit made clear that "the applicable state law provides the rule of decision" for "the question of whether a non-party can enforce an arbitration clause against a party." 648 F.3d 1166, 1170–71 (11th Cir. 2011) (relying on *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009)). Thus, the issue in the case at bar is controlled by Florida law. Therefore, in this case, Florida law applies to determine whether an arbitration agreement was formed between Plaintiffs and Tamko.

> **A.**   **<u>Plaintiffs Did Not Unambiguously Assent to the Arbitration Agreement, and Thus No Agreement to Arbitrate Was Created</u>**

As discussed herein and in the accompanying affidavits, Plaintiffs never agreed to arbitrate ***any*** claims with Tamko, and Tamko has not produced a single document signed by Plaintiffs in which they agreed to arbitrate any dispute at the time their Shingles were purchased. Instead, without any evidence from Plaintiffs and contrary to established Florida law regarding formation of contracts, Tamko argues that Plaintiffs and Class Members are "provided with notice of the conditions by which the shingles can be purchased through the language on the outside of the shingle package, which they can either accept, by purchasing and installing the shingles, or reject, by declining to purchase or returning the shingles." (Tamko's Motion at 9). However, Tamko fails to recognize the fundamental flaw in their

premise: a homeowner does not go to the store and purchase the shingles. Instead, as is the case here, the Shingles are purchased through an intermediary such as a roofer or contractor who did not have the authority to bind them to any arbitration agreement. *See* Exhibits 1 & 2.

To prove the existence of a contract, there must be an: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004)). An oral contract is subject to all basic requirements of contract law, *St. Joe Corp.*, 875 So. 2d at 381, and mutual assent is a prerequisite for the formation of any contract, see *Gibson v. Courtois*, 539 So. 2d 459, 460 (Fla. 1989) ("Mutual assent is an absolute condition precedent to the formation of the contract."); *Jacksonville Port Auth. v. W.R. Johnson Enters. Inc.*, 624 So. 2d 313, 315 (Fla. Dist. Ct. App. 1993) ("In order to create a contract it is essential that there be reciprocal assent to a certain and definite proposition." (internal quotation marks omitted)). Absent mutual assent, neither the contract nor any of its provisions come into existence *David v. Richman*, 568 So. 2d 922, 924 (Fla. 1990).

In *Gustavsson v. Wash. Mut. Bank, F.A.*, 850 So. 2d 570, 574 (Fla. Dist. Ct. App. 2003), the plaintiff signed a signature card and agreement when opening a bank account that stated "EACH PERSON SIGNING ABOVE HAS READ AND AGREES TO THE TERMS AND CONDITIONS AS LISTED ON THE BACK OF THIS SIGNATURE CARD . . . SEE REVERSE FOR IMPORTANT INFORMATION". *Id.* at 572. While the back was supposed to contain the Bank's arbitration clause, the reverse side was blank. The trial court held that the parties entered into a valid agreement to arbitrate, but the appellate court reversed holding "there was no mutual assent, either express or implied," to the arbitration agreement. *Id.* at

574. The court focused on the plaintiffs' lack of assent in declining to bind him to the arbitration provision. "The only portion of the Signature Card and Agreement that acknowledges any other document is on the back portion, which he never received." *Id*.

Here, as in *Gustavsson*, there was no express or implied assent by the Plaintiffs to the arbitration clause in the Limited Warranty or located on the wrapper of the shingles. Plaintiffs' sworn and undisputed testimony indicates the terms containing the arbitration clause were never provided to them. Nor were Plaintiffs ever aware that Tamko's Limited Warranty even contained an arbitration provision. *See* Exhibits 1 & 2. Thus, if the terms containing any arbitration clause were not provided to them, they cannot be bound by them and a contract requiring them to arbitrate any dispute was never formed. Thus, as in *Gustavsson*, Plaintiffs respectfully submit there was no assent, implied or express, to Tamko's arbitration clause.

Recently, in *Mendez v. Hampton Court Nursing Ctr., LLC*, 203 So. 3d 146 (Fla. 2016) a nursing home resident's son brought a lawsuit stemming from injuries and the eventual death of his father due to the nursing home's negligence. While the son signed the contract with the arbitration clause, the father never signed the nursing home contract. The trial court and the appellate court granted the nursing home's motion to compel arbitration and stay the judicial proceedings by holding that the father was the intended third-party beneficiary of the nursing home contract with the son, and the nursing home could bind the father to arbitration even though he never signed it. The Florida Supreme Court disagreed and refused to bind the father to the arbitration clause under agency principles. "First, we cannot conclude that the son was the father's representative." *Id.* at 150. "The record also contains the son's affidavit

attesting to the fact that the father had not granted the son any written authorization to act as the  father's agent, nor had the father 'otherwise directed, appointed, or instructed [the son] in any way on or prior to [the date of the father's admission to Hampton Court] to carry out [the father's] affairs for him relating to any matter'" *Id.* at 150-51.

As in *Mendez,* Plaintiffs never granted their roofers any authorization to act as their agents or bind them to Tamko's arbitration clause in any way. *See* Exhibits 1 & 2 ¶ 4.  And yet, without any evidence that Plaintiffs ever *saw* the shingle packaging, Tamko asserts that "[b]ecause plaintiffs purchased and retained TAMKO shingles bearing these terms, they are bound by them." Tamko Mot. at 10. On the contrary, as the Florida Supreme Court held in *Mendez,* since no mutual assent of all Tamko's material terms ever took place, Plaintiffs cannot be bound by Tamko's arbitration clause and cannot show that they unequivocally gave up their constitutional rights to a trial by a jury of their peers.

Tamko cites to three inapplicable cases to assert that an arbitration agreement was formed. However, as discussed below, unlike here, in each of those cases there was evidence the consumer actually saw and was aware of the arbitration clause and took an affirmative step to confirm that they knew there was an arbitration clause if any dispute arose. Here, there is no evidence Plaintiffs ever took any affirmative steps in purchasing the Shingles to confirm that they were even aware of the arbitration clause. Further, the sworn testimony of the Plaintiffs confirms that they were unaware of the arbitration clause, and if they had been aware of the arbitration clause, then they would not have had their roofers purchase the Shingles. *See* Exhibits 1 & 2 ¶ 5.

*TracFone Wireless, Inc. v. Pak China Grp. Co.,* 843 F. Supp. 2d 1284, 1298 (S.D. Fla 2012) is distinguishable because, unlike here, the defendants ***saw the original packaging containing the binding arbitration language*** because they removed the outside packaging themselves and when removing the product from the packaging agreed to the terms of the agreement. The court's analysis in determining a valid arbitration clause existed was based upon a "shrink wrap contract" analysis in which the customer opens a product and is later bound by the terms of the agreement that were on the outside of the packaging. *Id.* at 1298. Here, there's no evidence that Plaintiffs or Class Members removed the Shingle wrapping. The other cases cited by Tamko involve similar scenarios. In *Salco Distribs. LLC v. Icode, Inc.*, No. 8:05-CV-642-T-27TGW, 2006 U.S. Dist. LEXIS 9483 (M.D. Fla. Feb. 21, 2006), the customer saw the binding language on the screen when installing the software. In *Mgmt. Computer Controls, Inc. v. Charles Perry Constr., Inc.*, 743 So. 2d 627, 629 (Fla. Dist. Ct. App. 1999), the purchaser saw the license agreement affixed to the outside of the software packaging that contained a sticker that provided "[b]y opening this packet, you indicate your acceptance of the [company's] license agreement."

Unlike *Tracfone*, *Salco*, and *Mgmt. Computer Controls, Inc.*, Plaintiffs were never aware of an arbitration clause or that they "manifested acceptance" of the arbitration clause by keeping the Shingles on their home when they were unaware of the Limited Warranty or its arbitration clause. Plaintiffs never had the opportunity to read Tamko's Limited Warranty and had no opportunity to know that by purchasing shingles they were allegedly acknowledging acceptance of its terms and conditions. Plaintiffs never removed the Shingles from the original packaging. Common sense suggests that, in this regard, Plaintiffs are like the vast majority of homeowners who have shingles installed. Further, Tamko did not give Plaintiffs

thirty days to approve, return or reject the alleged terms and conditions contained in the Limited Warranty. The fact that homeowners are not provided with a copy of the Limited Warranty containing the arbitration clause is evident from the declaration of Titiia Milller, who only asserts that the mandatory arbitration language is printed on the outside of the package of Tamko's shingles. *See* Dec. of Miller (Doc. No. 11-2) ¶¶ 9-10. However, there is no evidence provided by Tamko that Plaintiffs or any of the members of the putative class even saw the mandatory arbitration agreement because, as is undisputed here, Plaintiffs' roofers took possession of and installed the Shingles on Plaintiffs' home. *See* Exhibits 1 & 2. There must be clear evidence of mutual assent that a homeowner who did not bargain with Tamko and did not have an opportunity to bargain with Tamko has forfeited his or her Seventh Amendment right to have his/her dispute decided by a jury of his/her peers. Accordingly, since Plaintiffs never knew or had any notice that the Shingles they purchased contained a Limited Warranty with an arbitration agreement and that by purchasing the shingles they would be agreeing to arbitration if any dispute arose, no such agreement can be forced on them now unilaterally. Therefore, if Plaintiffs never signed, intended, nor agreed to arbitrate, they cannot be forced to arbitrate, and Tamko has not met its burden to establish that there was an enforceable arbitration agreement entered into between Plaintiffs, Class Members and Tamko.

     **B.**     **<u>Other Courts Have Held That Tamko Cannot Bind Homeowners To An Arbitration Clause In Similar Cases</u>**

     While Tamko provides references to several opinions in which it was successful in compelling arbitration, it seeks to distance itself from two opinions in which its arbitration clauses were struck down because no contract was formed binding the homeowners to

arbitrate their disputes. In *Hobbs v. Tamko Building Products, Inc.*, 479 S.W.3d 147, 151 (Mo. Ct. App. 2015), *transfer denied* (Jan. 26, 2016), *US Supreme Court certiorari denied* (May. 22, 2017). At the time of the *Hobbs'* plaintiffs purchase of the shingles, plaintiffs were only shown Tamko's marketing materials that warranted the shingles as being durable, reliable, and free from defects for 30 years. Neither of the Plaintiffs received a copy of the Limited Warranty that containing an arbitration clause at the time of purchase, nor was either made aware the Limited Warranty included an arbitration clause. However, after learning about their defective Shingles, both sets of plaintiffs submitted warranty claims to Tamko. After Tamko either denied the warranty claim or only offered replacement of the Shingles, the plaintiffs initiated this action. The trial court denied Tamko's motion to compel arbitration, and he Missouri Southern District Court of Appeals affirmed by stating:

> Unlike computer documentation, the packaging for shingles is not an item typically kept by a consumer after the shingles are unbundled and used. Plaintiffs' affidavits stated unequivocally that they were not aware of the arbitration provision, and they dispute any assertion that they agreed to arbitrate their claims with Tamko. In fact, Plaintiffs dispute that they ever received the warranty that Tamko now wishes to enforce. Plaintiffs also maintain that, had they been aware of the arbitration provision, they would not have purchased the shingles. Plaintiffs' retention and use of the shingles does not prove that they accepted the terms to arbitrate their disputes in this case. *Id.* at 479 S.W.3d 147, 151.

Further, the court was unpersuaded by Tamko's argument that Plaintiffs accepted the terms of the arbitration provision because they invoked claims under the warranty. "We are unpersuaded by this argument. Both Hobbs and Jonesburg stated that they became aware of the warranty and its terms only *after* they filed their claim with Tamko, and that their underlying action does not arise out of the warranty." *Id* at 151-52. Similarly, this court

should reject the same arguments advanced by Tamko for the same reasons the *Hobbs* court did.

In *Nelson v. Tamko Bldg. Prods.*, No. 15-1090-MLB, 2015 U.S. Dist. LEXIS 75597, at *4 (D. Kan. June 11, 2015), Tamko's efforts to bind the purchasers of some of Tamko's singles to the arbitration provision in its 30-year Limited Warranty were similarly rejected. In *Nelson*, the district court held that "[d]efendant bears an initial summary-judgment-like burden of establishing that it is entitled to arbitration." *Id.* at 3. "Thus, defendant must present evidence which is sufficient to demonstrate an enforceable agreement to arbitrate." *Id.* The court found that because Tamko merely attached the unauthenticated limited warranty to its motion and did not submit evidence sufficient to establish an enforceable agreement, the motion to compel was denied. *Id.* at 3-4. 19.

**C.     Plaintiffs' Purported "Agreement" to Arbitrate Lacked Adequate Consideration**

It is a fundamental principle of contract law that a promise is not enforceable unless it is supported by consideration *Johnson Enters. of Jacksonville v. Fpl Grp.*, 162 F.3d 1290, 1311 (11th Cir. 1998). However, there is no valid consideration here.

"The formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." *Id.* (quoting *Restatement (Second) of Contracts* § 17 (1981)). Agreements to arbitrate are treated differently from statutes compelling arbitration. *Global Travel Mktg., Inc. v. Shea*, 908 So. 2d 392, 398 (Fla. 2005). The difference arises because the rights of access to courts and trial by jury may be contractually relinquished, subject to defenses to contract enforcement including voidness for violation of the law or public policy, unconscionability, or lack of consideration. *Id., See*

*generally Mazzoni Farms*, 761 So. 2d at 311 (recognizing public policy limitation on choice of law provision in contract); *Powertel, Inc.*, 743 So. 2d at 577 (holding arbitration clause in service contract unconscionable); *Vichaikul v. S.C.A.C. Enters., Inc.*, 616 So. 2d 100, 100 (Fla. 2d DCA 1993)("failure of consideration is a defense to the contract.")

As detailed herein and in Plaintiffs' affidavits, the shingles were purchased by Plaintiffs' roofers, Duffield Home Improvements and Tampa Roofing Company. *See* Exhibits 1 & 2 ¶ 3. In its motion, Tamko states, "the arbitration provisions in TAMKO's Limited Warranties with plaintiffs state that all claims '***BETWEEN [THE PURCHASER] AND TAMKO***' arising from or relating to the shingles and the Limited Warranty 'SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION.'" (Tamko Mot. at 15). (emphasis in original). However, since Plaintiffs and Class Members are not "the purchaser" there is not adequate consideration for the arbitration agreement.

> **D.**     <u>**Equitable Estoppel Is Inapplicable To Plaintiffs**</u>

Tamko's claim regarding equitable estoppel is inapplicable in this case. Equitable estoppel precludes a party from claiming the benefits of some of the provisions of a contract while simultaneously attempting to avoid the burdens that some other provisions of the contract impose." *Bailey v. ERG Enters., LP*, 705 F.3d 1311, 1320 (11th Cir. 2013), *citing Blinco v. Green Tree Servicing LLC*, 400 F.3d 1308, 1312 (11th Cir. 2005). A party relies on the terms of a contract when that party needs the underlying contract to make out his or her claim against the non-signatory. *Bailey v. ERG Enters., LP*, 705 F.3d 1311, 1321 (11th Cir. 2013), *citing Price Plaintiffs v. Humana Ins. Co. (In re Humana Inc. Managed Care Litig.)*, 285 F.3d 971, 976 (11th Cir. 2002). The signatory must attempt to hold the non-signatory to

the terms of the contract. *Id.*, *citing Becker v. Davis*, 491 F.3d 1292, 1300 (11th Cir. 2007). "For a plaintiff's claims to rely on the contract containing the arbitration provision, ***the contract must form the legal basis of those claims; it is not enough that the contract is factually significant to the plaintiff's claims or has a 'but-for' relationship with them.***" *Bailey v. ERG Enters., LP*, 705 F.3d 1311, 1322 (11th Cir. 2013) (emphasis added), *quoting Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 F. App'x 704, 709 (10th Cir. 2011) (per curiam).

Further, while federal courts generally "have been willing to estop a *signatory* from avoiding arbitration with a non-signatory when the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed," *Seth v. Rajagopalan*, No. 12-Civ-61040, 2013 U.S. Dist. LEXIS 199810, at 19 (S.D. Fla. Jan. 25, 2013) (citing *InterGen N.V. v. Grina*, 344 F.3d 134, 145-46 (1st Cir. 2003) (quoting *Thomson-CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773 (2d Cir.1995)), they have been hesitant to estop a non-signatory seeking to avoid arbitration. *Id.* (citing *InterGen N.V.*, 344 F.3d at 145). The distinction is not insignificant: "arbitration is strictly a matter of contract; if the parties have not agreed to arbitrate the courts have no authority to mandate that they do so." *Id.* (quoting *Thomson-CSF, S.A.,* 64 F.3d at 779); see also *United Steelworkers of Am. v. Warrior & Gulf Nay. Co.,* 363 U.S. 574, 582, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960). When a non-signatory is seeking to avoid arbitration, estoppel is limited to "cases [that] involve non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract." *Id.* at 19-20 (citing *InterGen N.V.,* 344 F.3d at 146)

15

(quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 200 (3d Cir. 2001)). "[A] court should be wary of imposing a contractual obligation to arbitrate on a non-contracting party . . ." *Id. (*quoting *Merrill Lynch Ins. Mgrs. v. Optibase, Ltd.*, 337 F.3d 125, 131 (2d Cir. 2003)).

In this matter, contrary to Tamko's assertion, Plaintiffs are not seeking to enforce the terms of Tamko's Limited Warranty. In its motion, Tamko misrepresents Plaintiffs' claims by asserting "Plaintiffs allege that TAMKO breached express warranties by, for example, failing to comply with its obligations under the Limited Warranty, and, as a result, that they 'suffered actual and consequential damages.' (Compl. ¶¶ 99, 106)." (Tamko Mot. at 13). Instead, Plaintiffs are seeking to enforce Tamko's express representations in its marketing materials that the Shingles "conform to all applicable industry standards and building codes, including ASTM D 3462 and those adopted by the State of Florida." (Compl. ¶¶ 2, 50, 95, 97). Attached as Exhibit 3 is an example of some of Tamko's marketing material with these representations. Indeed, a review of the Limited Warranties attached to Tamko's motion do not even reference the industry standards and building codes that are at issue in this litigation such as ASTM D 3462. (See generally Doc. 11-1; 11-3). Thus, Plaintiffs' claims are grounded solely in Tamko's failure to provide Shingles that conform to all applicable building codes and their misrepresentations/omissions regarding the quality of the Shingles. Thus, the principles of equitable estoppel do not apply.

For these reasons, Tamko's reliance on *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411 (4th Cir. 2000) is inapplicable. In *International Paper*, the plaintiff alleged breach of contract, rejection, and breach of warranties based on the contents

of a purchase order between the manufacturer and distributor of an industrial saw and were seeking to enforce rights in the warranty which contained the arbitration agreement. As previously mentioned herein, Plaintiffs are not bringing claims for breach of contract nor seeking to enforce the terms of the Limited Warranty. Thus, the claims made by the Plaintiff in *International Paper* are distinguishable to the claims made by Plaintiffs[1].

Tamko also argues that Plaintiff Bohn is estopped from avoiding his agreement to arbitrate because, before filing suit, "he manifested his acceptance of the terms of the Limited Warranty (including its arbitration clause) by submitting a claim to TAMKO pursuant to its provisions." (Tamko Mot. at 13). Tamko is again incorrect. A review of the documents submitted by Tamko regarding Bohn's claim does not confirm that Bohn was even aware that there was an arbitration provision at the time he submitted his warranty claim approximately five years after the shingles were installed on his home. (See generally Doc. Nos. 11-4, 11-5, 11-6, 11-7). Indeed, Plaintiff Bohn, in sworn testimony, has asserted that he was not aware that there was an arbitration clause, and he would not have submitted a warranty claim had he known that Tamko would try to use it against him to assert he was now bound by an arbitration clause. *See* Exhibit 2 ¶¶ 7-8. Here, simply because Plaintiff Bohn went to Tamko's website approximately five years after the Shingles were installed on his home to complain that his shingles were defective, he cannot be bound by any arbitration agreement that he was

---

[1]Curiously, none of the other equitable estoppel cases cited by Tamko are Florida or Eleventh Circuit cases despite the plethora of Florida and Eleventh Circuit case law examining equitable estoppel principles in non-signatory contexts. *See, e.g., Thome v. Layne Energy Sycamore, LLC*, No. 05-cv-02244-PSF-MJW, 2006 U.S. Dist. LEXIS 35015, at *9 (D. Colo. May 30, 2006), *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000), *Wojtalewicz v. Pioneer Hi-Bred Int'l, Inc.*, 959 F. Supp. 2d 1215, 1225-26 (D. Neb. 2013), *Damon v. Strucsure Home Warranty, LLC*, 338 P.3d 123, 127-28 (N.M. Ct. App. 2014), *Seney v. Rent-A-Ctr., Inc.*, 909 F. Supp. 2d 444, 453-54 (D. Md. 2012), *Olshan Found. Repair & Waterproofing v. Otto*, 276 S.W.3d 827, 831-32 (Ky. Ct. App. 2009). In addition, unlike the facts in this matter, these cases are inapplicable because the plaintiffs were seeking to enforce a direct benefit from a warranty containing the arbitration clause.

not aware of until after he filed his complaint even though he tried to resolve his dispute with Tamko without resorting to litigation. Tamko would like to conform this innocuous act to those actions in *Carwile v. Samsung*, 2013 U.S. Dist. LEXIS 185089 (C.D. Cal.). However, *Carwile* is distinct from this case because the plaintiff asserted several warranty specific claims, and the plaintiff was prosecuting a contractual/warranty case, and the court concluded that "[i]t would be wholly inconsistent for Ms. Carwile to claim that she never consented to the terms of the warranty, while at the same time attempting to enforce her rights under the warranty." *Id*. Here, as discussed throughout, Plaintiff Bohn is not attempting a breach of the Limited Warranty. Instead, he's prosecuting a breach of the express representations contained in Tamko's marketing materials. Thus, Tamko's argument that Plaintiff Bohn should be estopped from pursuing his claims in litigation fails, and *Carwile* is inapplicable.

    **E.**    **Plaintiffs' Should Not Be Required To Arbitrate Their Claims On An Individual Basis**

As discussed herein, Plaintiffs never agreed to arbitrate or waive their Seventh Amendment rights, and they never agreed that they would waive their ability to pursue this action on behalf of a class of similarly situated homeowners. The enforceability of a particular class action waiver in an arbitration agreement must be determined on a case-by-case basis, considering the totality of the facts and circumstances. *Dale v. Comcast Corp.*, 498 F.3d 1216, 1224 (11th Cir. 2007). As discussed herein and in Plaintiffs' affidavits, Plaintiffs should not be limited to pursuing their claims on an individual basis rather than as a class action because Plaintiffs were never aware of the Limited Warranty and arbitration clause at the time of purchase of the shingles or that they contained a class action waiver. Thus, Plaintiffs and Class Members never gave up their rights to pursue this action on behalf of a class.

## IV.    CONCLUSION[2]

For all of the reasons stated herein and the accompanying exhibits, Plaintiffs respectfully request that the Court deny Tamko's Motion compelling plaintiffs to arbitrate their claims on an individual basis and to dismiss this proceeding, or, in the alternative, stay the proceeding pending arbitration.

<div style="margin-left:50%">

Respectfully submitted,

</div>

Dated: The 14th day of June, 2017

<div style="margin-left:50%">

*/s/ Scott C. Harris*

Scott C. Harris (FL No. 103905)

**Whitfield Bryson & Mason LLP**

900 W. Morgan St.

Raleigh, NC, 27603

Telephone: (919)600-5000

Facsimile: (919)600-5035

scott@wbmllp.com

Panagiotis "Pete" V. Albanis

**Morgan & Morgan – Complex Litigation**

Florida Bar No. 77354

12800 University Drive, Suite 600

Fort Myers, Florida 33907

Telephone: 239-432-6605

Facsimile: 239-433-6836

palbanis@forthepeople.com

</div>

---

[2]In its motion in Section II, Tamko also asserts that the scope of the arbitration should be delegated to the arbitrator. However, Tamko fails to recognize the inherent flaw in its argument because it presupposes that there has been "clear and unmistakable evidence that the parties agreed to arbitrate" (*See* Tamko Mot. at 16). However, Tamko is presupposing that each party agreed to arbitrate the dispute. Since, as discussed herein, it is "clear and unmistakable" that the parties did not agree to arbitrate their dispute and Tamko has not provided evidence sufficient to establish an enforceable agreement to arbitrate, Plaintiffs do not need to address the arguments made by Tamko on pages 16-21 of its brief.

Dan Calvert
**Parker Waichman LLP**
27300 Riverview Center Boulevard
Suite 103
Bonita Springs, Florida 34134
Telephone: 239-390-8601
Facsimile: 239-390-0055
dcalvert@yourlawyer.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 14, 2017, I electronically filed the forgoing document with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the counsel of record.

<div style="text-align: right;">

*/s/ Scott C. Harris*
Scott C. Harris
**Whitfield Bryson & Mason LLP**
900 W. Morgan St.
Raleigh, NC, 27603
Telephone: (919)600-5000
Facsimile: (919)600-5035
scott@wbmllp.com

*Attorney for Plaintiffs*

</div>

21