IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| STEPHEN DYE, and DOUGLAS BOHN, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br>v.<br><br>TAMKO BUILDING PRODUCTS, INC.,<br><br>          Defendant. | Case No. 8:17-cv-00590-MSS-AEP |

### DEFENDANT TAMKO BUILDING PRODUCTS, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS THE PROCEEDING OR, IN THE ALTERNATIVE, STAY THE PROCEEDING

As demonstrated in TAMKO's opening brief, elementary principles of arbitration and contract law require that plaintiffs arbitrate their claims rather than pursue litigation in this Court.  This is so because the arbitration agreements between plaintiffs and TAMKO are valid and enforceable, and the agreements encompass all of plaintiffs' claims against TAMKO, as well as the gateway issue of arbitrability.  Plaintiffs offer three primary reasons why they should be excused from these binding contractual arrangements despite the straightforward terms of the arbitration agreement and the nature of plaintiffs' claims.  None has merit.

*First*, plaintiffs argue that the arbitration agreement does not bind plaintiffs because plaintiffs' roofers, not plaintiffs themselves, actually purchased TAMKO shingles.  But this position disregards that plaintiffs and their roofers had a classic agency relationship when it came to purchasing shingles.  Plaintiffs gave their roofers the implied authority to enter into contractual agreements to purchase the shingles and, as a result, the roofers' acceptance of

the terms of those agreements necessarily binds plaintiffs. To the extent that plaintiffs contend that their roofers needed special authorization to bind them to an arbitration agreement, that argument is squarely foreclosed by the Supreme Court's recent decision in *Kindred Nursing Centers Ltd. Partnership v. Clark*, 137 S. Ct. 1421 (2017).

*Second*, plaintiffs suggest that the arbitration agreement lacked sufficient consideration between them and TAMKO because it purportedly was executed only between their roofers and TAMKO. This argument again ignores that plaintiffs' roofers executed the agreements as their agents and that the terms of the agreements make clear that their benefits accrue to plaintiffs, not their roofers. Thus, the agreement obliges both plaintiffs and TAMKO to submit their claims to arbitration, easily satisfying the contractual requirement of consideration.

*Third*, plaintiffs dispute that equitable estoppel bars them from opposing arbitration pursuant to the terms of the agreement. But contrary to plaintiffs' assertions that they do not seek to enforce the Limited Warranty (of which the arbitration agreement is a part), their complaint makes clear that the Limited Warranty underpins their claims and allegations. And as to plaintiff Bohn in particular, plaintiffs admit that he sought to enforce the Limited Warranty by submitting a claim and receiving a settlement package. Plaintiffs nonetheless suggest that equitable estoppel should not apply to Bohn because he purportedly was not aware that there was an arbitration provision when he submitted his warranty claim. A contracting party, however, is bound by all of the terms of an agreement, regardless whether he reads them.

For these reasons, discussed further below, the Court should order plaintiffs to arbitrate their claims on an individual basis and dismiss this action or, alternatively, stay the proceeding pending arbitration.[1]

## ARGUMENT

### I. PLAINTIFFS ARE BOUND BY THE ARBITRATION AGREEMENT BECAUSE THEIR ROOFERS EXECUTED THE AGREEMENT AS PLAINTIFFS' AGENTS.

Plaintiffs first argue that they are not bound by the arbitration agreement because the roofers who purchased the TAMKO shingles supposedly "did not have the authority to bind them to any arbitration agreement." (Pls.' Opp'n at 6-7.) This argument lacks merit because plaintiffs' roofers acted as their agents for purposes of buying shingles and therefore had the power to bind plaintiffs to the arbitration agreement.

As a threshold matter, the facts establish – and plaintiffs do not seriously dispute – that plaintiffs' roofers acted as their agents for purposes of purchasing shingles. Dye's affidavit and supporting documentation make clear that he gave his roofer discretion to purchase and install shingles as long as the work met certain specifications. (*See* ECF No. 19-1, at 4.) And Dye directly relies on his agency relationship with his roofer when imputing the roofer's awareness of TAMKO's purported representations about the quality of its

---

[1] Plaintiffs also suggest that, even if the Court concludes that they are bound by the arbitration agreement, the Court should exercise its purported "case-by-case" discretion and hold that the agreement's class-action waiver is not enforceable. (Pls.' Opp'n' at 18.) This argument is contrary to the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, which held in no uncertain terms that courts may not decline to enforce class-action waivers in arbitration agreements when the agreement as a whole is otherwise valid. 563 U.S. 333, 352 (2011). As such, the validity of the class-action waiver in the arbitration agreement rises and falls with the validity of the agreement as a whole. And because the agreement as a whole is enforceable against plaintiffs, so too is the class-action waiver.

shingles to Dye himself.  (Compl. ¶ 22.)  Bohn's affidavit likewise reveals that he engaged a roofing company to install shingles on his home.  (ECF No. 19-2, at ¶ 3.)

       This evidence is conclusive, as courts addressing similar facts have recognized.  *See, e.g.*, *Am. Family Mut. Ins. Co. v. Tamko Bldg. Prods., Inc.*, 178 F. Supp. 3d 1121, 1125-26 (D. Colo. 2016) (holding that consumers' contractor and subcontractor became plaintiff's "special agent for purposes of completing the roofing project" and enforcing the terms of the arbitration agreement signed by subcontractor against consumers); *Hoekman v. Tamko Building Prods., Inc.*, No. 2:14-cv-01581-TLN-KJN, 2015 WL 9591471, at *3, *6 (E.D. Cal. Aug. 26, 2015) (concluding that plaintiffs' roofer "was working directly for and on behalf of Plaintiffs when it received, opened, and installed the roofing tiles" and consequently holding that agreement between TAMKO and roofer bound plaintiffs); *Overlook Terraces, Ltd. v. Tamko Bldg. Prods., Inc.*, No. 3:14-CV-00241-CRS, 2015 WL 9906298, at *4 (W.D. Ky. May 21, 2015) (concluding that plaintiff was bound by agreement even though it arranged for contractor to construct apartment units where shingles were installed); *Krusch v. Tamko Bldg. Prods., Inc.*, 34 F. Supp. 3d 584, 588-90 (M.D.N.C. 2014) (holding that agreement bound plaintiff where contractor acted as his agent and accepted terms of agreement).  *See also, e.g.*, *Fi-Evergreen Woods, LLC v. Estate of Robinson*, 172 So. 3d 493, 495 (Fla. Dist. Ct. App. 2015) (holding that nursing home patient was bound by husband's signature on arbitration agreement where husband signed agreement after patient stated that she wanted husband to "handle" admissions documents and noting that "a non-signatory to an arbitration agreement is bound to the agreement 'when the signatory . . . is authorized to act as the agent of the person sought to be bound'") (alteration in original) (citation omitted).

Here, as in *Hoekman*, plaintiffs' roofers were "working directly for and on behalf of [p]laintiffs when [they] received, opened, and installed the roofing tiles." 2015 WL 9591471, at *6. "By entrusting the receipt and installation of the shingles to [their roofers], [p]laintiffs indicated that they were authorizing their contractor[s] to represent them in their receipt of the shingles from Tamko." *Id.* These facts "establish implied agency between [p]laintiffs and their contractors" such that the agreement between the roofers and TAMKO "binds [p]laintiffs as well." *Id.*

Plaintiffs' cases are inapposite. Plaintiffs rely on *Mendez v. Hampton Court Nursing Center, LLC*, 203 So. 3d 146 (Fla. 2016), to support their assertion that they "never granted their roofers any authorization to act as their agents or to bind them to Tamko's arbitration clause in any way." (Pls.' Opp'n at 9.) But *Mendez* is irrelevant for the simple reason that the defendant there "expressly disclaim[ed] any reliance on agency principles." 203 So. 3d at 151. Nor are the decisions in the two TAMKO-related cases cited by plaintiffs persuasive. (*See* Pls.' Opp'n at 12-13 (citing *Hobbs v. Tamko Bldg. Prods., Inc.*, 479 S.W.3d 147 (Mo. Ct. App. 2015), and *Nelson v. Tamko Bldg. Prods., Inc.*, No. 15-1090-MLB, 2015 WL 3649384 (D. Kan. June 11, 2015)).) The Missouri state court in *Hobbs* did not address the agency question at issue here, instead rejecting arguments that the plaintiffs implicitly accepted the terms of the arbitration agreement by keeping and using TAMKO shingles and by asserting claims under the warranty. 479 S.W.3d at 150-51; *see also Am. Family*, 178 F. Supp. 3d at 1126 n.5 (declining to follow *Hobbs* and deeming it "simply unpersuasive"). And the court in *Nelson* refused to enforce the arbitration agreement at issue there because

the defendant failed to produce an authenticated copy of the limited warranty, not because of any conclusion as to agency. 2015 WL 3649384, at *2.[2]

Plaintiffs' implicit suggestion that a mere agency relationship does not suffice in the absence of specific authorization to bind the principal to an arbitration agreement (*see* Pls.' Opp'n at 9; ECF 19-1, at 1, ¶ 4; ECF 19-2, at 1, ¶ 4) is also meritless. The Supreme Court recently rejected just this argument, invalidating a Kentucky rule that required an agent to "possess specific authority to 'waive his principal's fundamental constitutional rights to access the courts [and] to trial by jury.'" *Kindred Nursing Ctrs.*, 137 S. Ct. at 1424-25 (alteration in original) (citation omitted). As the Supreme Court explained, such a rule "singles out arbitration agreements for disfavored treatment" and thereby violates the Federal Arbitration Act. *Id.* Thus, under *Kindred Nursing*, plaintiffs' general grant of authority to their roofers to purchase TAMKO shingles necessarily includes a subsidiary grant of authority to enter into an arbitration agreement in the process.

## II.     THE ARBITRATION AGREEMENT IS SUPPORTED BY ADEQUATE CONSIDERATION.

As TAMKO previously established, plaintiffs' arbitration agreements are supported by valid consideration because they require both plaintiffs and TAMKO to arbitrate their

---

[2] Plaintiffs criticize TAMKO for "not produc[ing] a single document ***signed by Plaintiffs*** in which they agreed to arbitrate any dispute at the time their Shingles were purchased." (Pls.' Opp'n at 6 (emphasis added).) As outlined above, plaintiffs' roofers' agreement to the terms of the Limited Warranty binds plaintiffs. That, standing alone, suffices to make the arbitration agreement enforceable against plaintiffs. Nor is there any requirement of a signed document for the arbitration agreement to be fully binding and enforceable. TAMKO prints the entire Limited Warranty (including the arbitration agreement) on the outside of every package of shingles. Consistent with Florida law, plaintiffs' roofers' purchase and installation of the shingles constituted an acceptance of the terms of the Limited Warranty (including the arbitration provisions) and created an enforceable agreement regardless of any signature. *See, e.g.*, *TracFone Wireless, Inc. v. Pak China Grp. Co.*, 843 F. Supp. 2d 1284, 1298-99 (S.D. Fla. 2012). (*See also* Mot. at 8-10.)

claims against one another. (Mot. at 14-15.) In response, plaintiffs contend that, "since Plaintiffs and Class Members are not 'the purchaser' [of TAMKO shingles] there is not adequate consideration for the arbitration agreement." (Pls.' Opp'n at 14.) Here again, however, plaintiffs' argument rests on the flawed premise that they are not bound by the arbitration agreement because they did not purchase the shingles. As shown above, plaintiffs' roofers accepted the terms of the arbitration agreement as plaintiffs' agents, thereby binding plaintiffs.

Moreover, the terms of the Limited Warranty make plain that plaintiffs are bound by the arbitration clause, even if they did not actually purchase TAMKO shingles themselves. The Limited Warranty applies to the "Owner" of the singles – a term that is expressly defined in the Limited Warranty to include the "owner of the building at the time the Shingles are installed on the building," even owners who are the first to purchase a building after shingles have been installed. (*See* ECF No. 11-1, at 1-2; ECF No. 11-3, at 1.) This definition indisputably covers plaintiffs, even if someone other than the "Owner" purchased and installed the shingles.

In short, properly construed, the arbitration agreement clearly binds both plaintiffs and TAMKO, requiring each to assert claims against the other in arbitration. It is therefore supported by adequate consideration.

### III.  EQUITABLE ESTOPPEL PRECLUDES PLAINTIFFS FROM AVOIDING THE ARBITRATION AGREEMENT.

Even if plaintiffs were not otherwise bound by the arbitration agreement, the doctrine of equitable estoppel would bar plaintiffs from pursuing their claims in court. (*See* Mot. at 11-14.) Plaintiffs respond that "the principles of equitable estoppel do not apply" because

plaintiffs purportedly "are not seeking to enforce the terms of [the Limited Warranty]." (Pls.' Opp'n at 16.) This argument fails for at least two reasons.

*First*, plaintiffs ignore that their complaint does, in fact, raise enforcement of the Limited Warranty as a central issue, alleging for example that a question of law and fact common to plaintiffs' proposed class is "[w]hether Plaintiffs and the Classes are entitled to specific performance of the Limited Warranty." (Compl. ¶ 43o.) Not only that, but plaintiffs also allege that "[t]hrough," among other things, its "written warranties," TAMKO "created express warranties that became part of the basis of the bargain with Plaintiffs and the Class members." (*Id.* ¶ 95.) Plaintiffs therefore are "estopped from asserting that the lack of [their] signature on a written contract precludes enforcement of the contract's arbitration clause" because they "maintain[] that other provisions of the same contract should be enforced to benefit [them]." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417-18 (4th Cir. 2000); *see also, e.g.*, *Allied Prof'ls Ins. Co. v. Fitzpatrick*, 169 So. 3d 138, 142 (Fla. Dist. Ct. App. 2015) (holding that "estoppel applies here to bind the plaintiffs to arbitration" because "the plaintiffs cannot claim they are entitled to the benefit of the policy's coverage provision while simultaneously attempting to avoid the burden of the policy's arbitration provision").

*Second*, Bohn is precluded by equitable estoppel from asserting his claims in court for the additional reason that he already submitted a claim to TAMKO pursuant to the terms of the Limited Warranty and received a settlement package. (*See* Mot. at 13-14.) Plaintiffs admit as much but nevertheless suggest that Bohn should be excused from straightforward application of the doctrine because he "was not aware that there was an arbitration clause,

and he would not have submitted a warranty claim had he known" that it might preclude him from asserting claims in court. (Pls.' Opp'n at 17-18.) Plaintiffs' position amounts to little more than the contention that Bohn should not be bound by the arbitration agreement because he never read it – even though the letter TAMKO sent him offering to settle his warranty claim expressly stated that the "applicable limited warranty [was] enclosed for [his] review," providing him ample opportunity to decide whether to subject himself to its terms before cashing the check TAKMO sent him. (*See* Mot. at 5; *id.* Ex. 5 (ECF No. 11-5), at 1.)  Courts have rejected such arguments time and again.  *See, e.g.*, *Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283, 1296 (S.D. Fla. 2007) (explaining that "Florida law is . . . clear that a party's failure to read an agreement cannot excuse that party's duty to both read the agreement *and* to 'know its contents'" and concluding that "Plaintiffs should not be rewarded for consciously choosing not to read their Purchase Contracts") (citation omitted); *Hansen v. Wheaton Van Lines, Inc.*, 486 F. Supp. 2d 1339, 1346 (S.D. Fla. 2006) ("An individual's failure to read or investigate the terms of the contract she signed is not a defense to enforcement of the contract."); *Brea Sarasota, LLC v. Bickel*, 95 So. 3d 1015, 1017 (Fla. Dist. Ct. App. 2012) ("A party to a contract is not 'permitted to avoid the consequences of a contract freely entered into simply because he or she elected not to read and understand its terms before executing it, or because, in retrospect, the bargain turns out to be disadvantageous.'") (citation omitted).  This Court should do the same.

## CONCLUSION

For the foregoing reasons, the Court should enter an order compelling plaintiffs to submit their individual claims to arbitration and dismiss the complaint or, in the alternative, stay the proceeding pending arbitration.

Dated: June 30, 2017                                        Respectfully submitted,

/s/  Francis M. McDonald, Jr., Esq.                         /s/  Jessica Davidson Miller
FRANCIS M. MCDONALD, JR., ESQ.                              John H. Beisner
Florida Bar No. 0327093                                     Jessica Davidson Miller
Trial Attorney                                              SKADDEN, ARPS, SLATE, MEAGHER
SARAH A. LONG, ESQ.                                         & FLOM, LLP
Florida Bar No. 0080543                                     1440 New York Avenue, N.W.
MCDONALD TOOLE WIGGINS, P.A.                                Washington, DC 20005
111 N. Magnolia Avenue, Suite 1200                          (202) 371-7000
Orlando, FL 32801
Telephone: (407) 246-1800
Facsimile: (407) 246-1895
fmcdonald@mtwlegal.com
slong@mtwlegal.com

*ATTORNEYS FOR DEFENDANT TAMKO BUILDING PRODUCTS, INC.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 30, 2017, the foregoing was electronically filed with the Clerk of Court via the CM/ECF system, which will notify:

Jordan L. Chaikin, Esq., Parker Waichman LLP, 27300 Riverview Center Blvd., Suite 103, Bonita Springs, FL 34134; jchaikin@yourlawyer.com

Daniel K. Bryson, Esq. & Scott C. Harris, Esq., Whitfield Bryson & Mason LLP, 3700 Glenwood Ave., Suite 410, Raleigh, NC 27612; dan@wbmllp.com; scott@wbmllp.com

Christopher L. Coffin, Esq., Pendley Baudin & Coffin, L.L.P., 1515 Poydras St., Suite 1400, New Orleans, LA 70112.

/s/Jessica Davidson Miller
Jessica Davidson Miller
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM, LLP
1440 New York Avenue, N.W.
Washington, DC 20005
(202) 371-7000

*Attorney for Defendant TAMKO Building Products, Inc.*